**DARE TO BE GREAT, INC., et al.,
Appellants,**

v.

**COMMONWEALTH of Kentucky ex rel.
Ed W. HANCOCK, Attorney General, Appellee.**

Court of Appeals of Kentucky.

May 31, 1974.

Charles L. Calk and Joseph H. Miller, Gess, Mattingly, Saunier & Atchison, Lexington, for appellants.

Ed W. Hancock, Atty. Gen., Laura L. Murrell, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

This is an appeal from a judgment which permanently enjoined appellants and all persons in active participation with them from engaging in certain trade practices deemed to be false, misleading and deceptive and which awarded a recovery of damages. KRS 367.190.

The appellants, Dare To Be Great, Inc., and Glen W. Turner Enterprises, Inc., are Florida corporations which have qualified to do business in Kentucky. The appellant, Glen W. Turner, a resident of Florida, is the principal shareholder of Glen W. Turner Enterprises, Inc., which in turn is the parent corporation of Dare To Be Great, Inc.

The basic question presented in this appeal is whether the activities of Dare To Be Great, Inc., constituted false, misleading or deceptive practices in the conduct of any trade or commerce.

Dare To Be Great, Inc., claims that its plan of operation consisted of the sale of a series of motivational tapes to a purchaser for the sum of $1,000.00. It is alleged that the tapes were prepared by leading authorities on behavioral psychology and other professionals and were capable of enabling the purchaser to better understand himself and his relationship to others, of providing

inspiration and motivation to achieve greater success and of benefiting the purchaser generally. The purchaser was not only motivated and inspired but he was given an opportunity to put into practice and demonstrate his newly discovered personal magnetism by assisting in the sale of the program to others for which he would receive a commission of $400.00 on each such sale after the first two. In addition he would receive a commission on the first two sales made by all of those initiated into the program by him.

The scheme thus developed into pyramid selling. Theoretically each two new enrollees would in turn bring in two more enrollees and each of them in turn would bring in an additional two enrollees. By this pyramiding of earnings the alluring prospect was dangled in front of potential customers of their capability of earning thousands of dollars.

The actual method of operation was that agents for Dare To Be Great attracted the interest of prospective customers with bizarre activities designed to indicate to the prospective customer that the agent had prospered greatly from his participation in the program. Once interested, the prospective customer was offered an all-expense paid trip to a conveniently located resort at which the Dare To Be Great Program was explained. These trips were called Go-Tours. A portion of the program on these Go-Tours consisted of the showing of a film in which Glen W. Turner explained how he arose from rags to riches and intimated that new prospects could do likewise if they would follow his methods. His agents attempted to convey the impression that each of them had made great amounts of money in the program. Intensive efforts were made on these Go-Tours to secure $1,000.00 from each of the prospective customers.

On these Go-Tours the inspirational qualities of the motivational tapes faded into the background. The big lure to secure the prospective customer to part with his $1,000.00 was the opportunity that he would be afforded to get in on the pyramid and quickly begin earning the $400.00 commissions. The motivational tapes were of little importance in this connection because the prospects, once having been sold, were instructed to return home and bring two or more new recruits to the next Go-Tour. They were instructed not to attempt to make any sales of the program on their own initiative but to leave the selling to the agents of the corporation at the Go-Tour operation. The succeeding Go-Tour often occurred before any tapes were delivered to a purchaser and in some instances tapes were never delivered.

Although prospects were informed that they could become salesmen without the purchase of the tapes the selling techniques employed were such as to downgrade this option and few, if any, prospective customers ever became salesmen without a prior investment on their part.

Expert testimony was introduced to the effect that the chain of bringing in two new prospects in each time period would result in the enrollment of the entire population of the State of Kentucky and of the entire world within a few time periods leaving no one for those who last entered the program to solicit as customers.

Although the main emphasis of the selling program was based upon the prospect of great earnings for the purchasers of the tapes the evidence was plain that it was impossible for the vast majority of them to earn a profit.

■ We are of the opinion that the entire scheme was fraudulent and misleading with the principal design of bilking prospective customers of $1,000.00 in a chain-letter type program. The motivational tapes were only incidental to the program and their chief function was to provide the appellants with a flimsy and transparent claim of legitimacy for their fraudulent enterprise.

■ Appellants contend that the court was without jurisdiction as to Glen W.

Turner individually and Glen W. Turner Enterprises, Inc. As previously noted, the Go-Tours featured films depicting the success of Glen W. Turner. Prospective customers were greeted with a welcome on behalf of Glen W. Turner and Glen W. Turner Enterprises, Inc. Some of the agents of Dare To Be Great, Inc., were also shown to be employees of Glen W. Turner Enterprises, Inc.

Dare To Be Great, Inc., is a wholly owned subsidiary of Glen W. Turner Enterprises, Inc. Glen W. Turner Enterprises, Inc., is a Florida Corporation but is licensed to do business in Kentucky. The activities of Dare To Be Great, Inc., in Kentucky were pursued by agents with common ties of employment to both corporations; the selling scheme was presented in such a manner that the affairs of the two corporations appeared to be intertwined and we believe that both corporations were simply the alter ego of Glen W. Turner.

■ Generally a corporation will be looked upon as a separate legal entity but when the idea of separate legal entity is used to justify wrong, protect fraud or defend crime the law will regard the corporation as an association of persons. Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793 (1944); United States v. Milwaukee Refrigerator Transit Company, C.C.Wis., 142 F. 247 (1905).

We do not find error in the failure of the trial court to dismiss the complaint as to the appellants Glen W. Turner, individually, and Glen W. Turner Enterprises, Inc.

Appellants contend that KRS 367.170, 367.190 and 367.350 are unconstitutional.

■ KRS 367.170 is claimed to be void for vagueness in that its terms are undefined in the act and reasonably prudent persons of common intelligence cannot understand their meaning. No case involving similar terms is cited by appellants. We are of the opinion that the words *false, misleading* and *deceptive* have meanings which are generally well understood by those who want to understand them. The terms are certainly no less broad then the language used in 15 U.S.C. Section 45(a)(1) which forbids:

"* * * unfair or deceptive acts or practices in commerce, * * *."

Although not ruling directly upon the constitutionality of this section, the Supreme Court in Federal Trade Com'm. v. Colgate-Palmolive Company, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965), commented upon the language used as follows:

"Congress amended the Act in 1938 to extend the Commission's jurisdiction to include 'unfair or deceptive acts or practices in commerce'—a significant amendment showing Congress' concern for consumers as well as for competitors. It is important to note the generality of these standards of illegality; the proscriptions in § 5 are flexible, 'to be defined with particularity by the myriad of cases from the field of business.'" Cf. Federal Trade Comm. v. Motion Picture Advertising Service Company, 344 U.S. 392, 73 S.Ct. 361, 97 L.Ed. 426 (1953).

KRS 367.190 is claimed to be unconstitutional because Section 2 of the Act authorizes a restraining order upon application of the Attorney General without notice or prior hearing. Appellants rely upon Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.E.2d 556 (1972).

We find it unnecessary to decide the point because the alleged invalidity of Section 2 of the Act would not invalidate the entire Act, nor would it have any effect upon a judgment which granted a permanent injunction after trial. In this case the permanent injunction was granted after a full trial before the court and no complaint is made that appellants did not have adequate notice of the trial or that they were not afforded a full opportunity to be heard.

Appellants contend that KRS 367.350, the referral selling statute, is unconstitu-

tional and in the alternative they claim that it is inapplicable to the facts of this case. We do not reach this issue. The permanent injunction was properly granted to prevent a violation of KRS 367.170. Whether the proscribed conduct also violated some other statute is immaterial.

Numerous other issues were raised by appellants, each of which we have considered and found to be without merit.

The judgment is affirmed.

All concur.