**COMMONWEALTH of Kentucky ex rel. Robert F. STEPHENS, Attorney General, Appellant,**

v.

**NORTH AMERICAN VAN LINES, INC., Appellee.**

Court of Appeals of Kentucky.

July 20, 1979.*

See also, Ky., 600 S.W.2d 458.

Robert F. Stephens, Atty. Gen., Ruth H. Baxter, Asst. Atty. Gen., Sp. Prosecutions Division, Consumer Protection Litigation Unit, Frankfort, for appellant.

James D. Moyer, Stites, McElwain & Fowler, Louisville, for appellee.

Before HOGGE, REYNOLDS and VANCE, JJ.

REYNOLDS, Judge.

The Commonwealth appeals from a summary judgment in Jefferson Circuit Court finding that as a matter of law it was not authorized to bring or maintain this action by the Consumer Protection Act.

Appellee, North American Van Lines (hereinafter NAVL), is a large motor carrier which hauls goods interstate and has advertised in Kentucky to obtain new owner-operators who want their own "business on wheels" and who are willing to haul goods under contract for NAVL. On March 2, 1977, the Attorney General filed a complaint alleging that NAVL had made unfair, false, misleading and deceptive statements in connection with its recruiting of, and sales to, owner-operators. Extensive discovery was thereafter taken by the parties. NAVL submitted a pretrial memorandum in which one argument was that owner-operators are not consumers protected by the Consumer Protection Act and that, therefore, no violation of the Act could have occurred. On May 15, 1978, NAVL filed a motion for summary judgment and, at an in-chambers conference, counsel for the Attorney General and for NAVL agreed to enter a stipulation to the effect that:

---

* This case was originally designated "Not to be Published." On May 13, 1980 the Supreme Court ordered it published.

[t]he persons, described as "consumers" in the Complaint, as to whom the Plaintiff in the Complaint alleges violations of the Kentucky Consumer Protection Act (KRS Chapter 367), responded to Defendant's advertising, entered the Defendant's owner-operator's program and purchased tractors suitable for hauling large trailers for the purpose of engaging in the trucking business for profit, and not for personal, family or household purposes. There is no genuine issue concerning a fact material to this issue.

The trial court entered summary judgment in favor of NAVL on the ground that the Consumer Protection Act had no application to the transactions questioned in the complaint, and this appeal follows.

The Attorney General contends that the Consumer Protection Act was broadly designed to enable him to carry out his law enforcement duties, regardless of the persons identified as being victimized by unfair, false, misleading or deceptive practices of another in the conduct of commerce and that the lower court read into the Act nonexistent limitations upon his authority. Appellee argues that the Act was designed to protect consumers and that the Attorney General's law enforcement duties do not extend to business and commercial transactions such as NAVL's owner-operator program. We are presented with a question of first impression as to whether K.R.S. 367.-110 through K.R.S. 367.300 is applicable to NAVL's efforts to obtain new owner-operators because of its method of offering and sale of business opportunities within this Commonwealth.

That portion of K.R.S. Chapter 367 which is officially designated as the Consumer Protection Act contains no definition of the term "consumer." Appellee, however, cites various Kentucky statutes to the effect that there is no lack of clarity in Kentucky law about who is a consumer. K.R.S. 367.-600(2), defining the term "consumer" as used in K.R.S. 367.610, dealing with consumer credit contracts, states:

> [c]onsumer means a natural person who seeks or acquires goods or services for personal, family or household use.

Outside of K.R.S. Chapter 367, the Kentucky version of the Uniform Commercial Code defines goods as being " 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes." See K.R.S. 355.9–109(1). Similar definitions of the term "consumer" are contained in various federal legislation. See the Magnuson-Moss Warranty Act, 15 *U.S.C.* § 2301(3), (1); the Consumer Product Safety Act, 15 *U.S.C.* § 2052(a)(1); and Consumer Credit Protection Act, 15 *U.S.C.* § 1602(h).

The Attorney General, without actually taking issue with such definitions, argues that nowhere within the Consumer Protection Act is the term "consumer" or similar word used either in connection with, or as a limitation of, the law enforcement proceedings authorized by the Act, and he is therefore not limited to prosecuting only selected types of illegal business acts or practices. He maintains that the Act's limitation of private right of action to "any person who purchases or leases goods or services primarily for personal, family or household purposes," as specified in K.R.S. 367.220, is separate from his statutory authority, and that he is treated differently because as a law enforcement officer he has different purposes in initiating legal proceedings.

As to the Attorney General's right to bring an action restraining or enjoining those unfair, false, misleading or deceptive commercial practices declared unlawful by K.R.S. 367.170, as distinguished from the private right of action granted certain individuals by K.R.S. 367.220, an examination of the Act reveals that the legislature intended to enact "a strong and effective consumer protection program to protect the public interest and the wellbeing of *both* the consumer public and the ethical sellers of goods and services." K.R.S. 367.120 (emphasis added.) To that effect, K.R.S. 367.-190 expressly authorizes the Attorney General to move immediately to prohibit the uses of those methods and practices whenever he

> has reason to believe that *any person* is using, has used, or is about to use any method, act or practice declared by

K.R.S. 367.170 to be unlawful and that such proceeding would be in the public interest. (Emphasis added)

The term "person" as defined by K.R.S. 367.110(1) means "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." Therefore, the plain wording of the Act authorizes the Attorney General to proceed on behalf of the Commonwealth in his law enforcement authority when (1) he has reason to believe that any person is using, has used or is about to use any method, act or practice declared to be unlawful, and (2) that said proceeding would be in the public interest. We find that there are no other express restrictions to limit the nature of the activities against which he may proceed, and therefore must determine whether it is implicit in the Act that he proceed only against methods and practices used in the merchandising of goods or services intended for personal, family or household use.

Appellee relies upon *People ex rel. Scott v. Cardet International Inc.*, 24 Ill.App.3d 740, 321 N.E.2d 386 (1974). In that case, the Illinois Attorney General filed a complaint against Cardet International Inc., alleging that Cardet's sale of distributorship and area managership franchises was in violation of the Illinois Consumer Fraud Act. (Ill.Rev.Stat.1971, ch. 121½, par. 261 et seq.). At the time the complaint was filed, the Illinois Act stated that it was designed to protect consumers and borrowers. Unlike the Kentucky Consumer Protection Act, however, the Illinois Act contained a definition of the term "consumer" as being

[a]ny person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household or in connection with the operation of his household. [§ 261(e)]

Also, there had been an amendment of the Illinois Act effective subsequent to the filing of the complaint which expressly extended the protection of the Act to businessmen. (Ill.Rev.Stat.1973, ch. 121½). Given these facts, the Illinois Court held that the Attorney General had failed to

state a cause of action under its Consumer Fraud Act. Its reasoning was that the definition given to the word "consumer," coupled with the subsequent amendment of the Act, indicated that the legislature did not envision that the purchaser of a franchise would be protected by the Act.

NAVL argues that the recent enactment of K.R.S. 367.801—K.R.S. 367.819, relating to the sale of business opportunities and effective June 17, 1978, subsequent to the filing of the complaint, is indicative that the practices the Attorney General complains of were not covered by the Consumer Protection Act. An examination of these newly enacted statutes, however, indicates that they are intended to stand on their own, and not as an extension of, or amendment to, the Kentucky Consumer Protection Act, as was the case with the Illinois amendment. The Business Opportunity Act requires registration of persons engaged in selling certain specified and statutorily defined business opportunities, posting of bond and the supplying of certain information. K.R.S. 367.815 provides for a limited private right of action for the purchaser of a business opportunity, and it is clear, in light of K.R.S. 367.220, that such right would not have existed prior to the subsequent enactment. We are unpersuaded, however, that K.R.S. 367.801—K.R.S. 367.819 in any way affects or alters the Attorney General's right to proceed against methods, acts or practices declared unlawful by the Consumer Protection Act. The enactment of the Business Opportunities Act may well have indicated the desire of the legislature to remove all doubt that the Attorney General could rightly proceed against an alleged business opportunity scheme, pursuant to K.R.S. 367.190 if K.R.S. 367.170 had been violated. See *Commonwealth v. Allen*, Ky., 404 S.W.2d 464 (1966).

Decisions from jurisdictions having consumer fraud acts similar to Kentucky's and containing no definition of the term "consumer," have applied them to business opportunity sales. See *Kugler v. Interplanetary Inc.*, 120 N.J.Super. 216, 293 A.2d 682 (1972); and *State ex rel. Turner v. Koscot Interplanetary Inc.*, 191 N.W.2d 624 (Iowa

1971). In *Dare to Be Great, Inc. v. Commonwealth ex rel. Hancock*, Ky., 511 S.W.2d 224 (1974), the former Court of Appeals applied the Consumer Fraud Act to a profit-motivated sales scheme. While *Dare to Be Great, supra*, did not classify the buyers of these opportunities as consumers, we determine the case is indicative of the broad law enforcement authority that the Attorney General has been granted by the Act.

We hold that the Kentucky Consumer Protection Act was broadly designed to curtail unfair, false, misleading or deceptive practices in the conduct of commerce and that the Attorney General is therefore not limited to prosecuting only those selected types of illegal business acts or practices which are used in the merchandising of goods or services intended for personal, family or household use.

The judgment of the trial court is reversed.

HOGGE, J., concurs.

VANCE, J., concurs in result only.