STATE OF NORTH CAROLINA EX REL. RUFUS L. EDMISTEN, ATTORNEY GENERAL, PLAINTIFF v. CHALLENGE, INC., EDWARD G. RECTOR, DOUGLAS L. BEEKMAN, CAROL A. RECTOR, ALLEN K. OAKS AND RICHARD MAILMAN, DEFENDANTS

No. 8110SC195

(Filed 17 November 1981)

1. Unfair Competition § 1— illegal pyramid scheme — preliminary injunction proper

The trial court did not err in concluding defendant, Challenge, Inc., was operating an illegal pyramid scheme in violation of G.S. 14-291.2, and in granting a preliminary injunction where the evidence tended to show that Challenge, Inc., marketed a program of four motivational seminars at a total price of $5000; that the multi-level sales program was designed both to sell the seminars and to recruit new salesmen; that prospective salesmen were invited to meetings at which they were told about the company and about the potential profits to be made from selling the seminars; that a Sales Trainee could become an Independent Sales Agent by selling $5000 worth of seminars, being approved by another agent, paying for and attending a workshop, and recruiting two additional Sales Trainees; that all Sales Agents recruited in North Carolina met the requirements for becoming a Sales Agent by selling the seminar to themselves; and that all participants in North Carolina who advanced in the program did so by purchasing the seminars for themselves in order to meet the $5000 requirement to become an Independent Sales Agent.

**2. Unfair Competition § 1— preliminary injunction properly issued — no need to show irreparable harm**

Under G.S. 14-291.2 and G.S. 75-14 it is not necessary for the State to show actual injury has resulted in order for a court to provide for injunctive relief from the continuation of illegal pyramid and chain schemes. Rather, the State must merely show that the act or practice complained of adversely affects the public interest.

APPEAL by defendants from *Canaday, Judge.* Preliminary injunction issued 23 September 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 23 September 1981.

The State's complaint alleged that defendants were operating a pyramid distribution program in violation of G.S. 14-291.2 and G.S. 75-1.1, relating to unfair methods of competition. The State requested a temporary restraining order, a preliminary injunction, and a permanent injunction, plus civil penalties. Defendants denied that Challenge, Inc., was operating an illegal pyramid.

At the hearing on the preliminary injunction the State's evidence, consisting of four affidavits, tended to show that Challenge, Inc., marketed a program of four motivational seminars, at a total price of $5,000.00. The multi-level sales program was designed both to sell the seminars and to recruit new salesmen. Prospective salesmen were invited to meetings at which they were told about the company and about the potential profits to be made from selling the seminars. The first level of salesmen was the Sales Trainee, who received a twenty percent commission on his sales. The only requirement for this level was to be sponsored by an Independent Sales Agent. An Independent Sales Agent could earn the highest profits: thirty percent of sales made by Sales Trainees recruited by the particular Sales Agent, plus twenty percent for any direct sales of seminars by the Sales Agent himself. A Sales Trainee could become an Independent Sales Agent by selling $5,000.00 worth of seminars, being approved by another agent, paying for and attending a workshop, and recruiting two additional Sales Trainees. All Sales Agents recruited in North Carolina met the requirements for becoming a Sales Agent by selling the seminars to themselves, since they could purchase the $5,000.00 package at a twenty percent discount for $4,000.00. The meetings at which the program was explained were always held in a distant city, with everyone traveling to them by bus. The bus rides and meetings included an

emotional "pep rally"-type recruiting approach. A Sales Agent or Trainee always stayed with the prospect, telling him about the merits of joining the program. Prospects were encouraged to raise money for the seminars by borrowing if necessary. One woman stated in her affidavit that she had lost her house as a result of borrowing to pay for the seminars.

Defendants' evidence tended to show that no one was required to buy the seminars in order to become an Independent Sales Agent. People in other states had become Independent Sales Agents without buying the seminars themselves. The people who bought the seminars did so because they were interested in the subject matter and because it was a convenient way to reach their sales quota. Over twenty people filed affidavits showing their support for Challenge, Inc., and their satisfaction with the seminars. Challenge, Inc., did not use high pressure sales tactics. There was a three-day cooling off period during which prospects could get a total refund and an additional seven-day period for a partial refund. To the date of the hearing, the company had granted full refunds to anyone who requested them within ten days. The marketing program was designed to be similar to plans involving insurance companies and their agents. Sales Agents made commissions only when those they had recruited made sales, not when the recruits entered the program.

The court found that Glenn Turner was involved in Challenge, Inc., that Challenge's presentation to prospects was highly emotional, that there was no reasonable possibility a Sales Trainee would buy seminars from anyone else, and that individuals were paying for the opportunity to earn a commission when new participants were introduced into the plan. The trial court concluded that Challenge was operating an illegal pyramid scheme and granted a preliminary injunction. Defendants appealed.

*Attorney General Edmisten by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Howard Kramer and William L. Cassell for defendant appellants.*

CLARK, Judge.

The sole question before this Court is whether the trial court erred in granting the preliminary injunction, the defendants having elected to appeal before the ultimate questions raised by the pleadings are decided at the trial on the merits. Ordinarily, a preliminary injunction will be granted pending trial on the merits, (1) if there is probable cause for supposing that plaintiff will be able to sustain his primary equity, and (2) if there is reasonable apprehension of irreparable loss unless injunctive relief be granted, or if in the court's opinion it appears reasonably necessary to protect the plaintiff's right until the controversy between him and defendant can be determined. *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348 (1975); *Laboratories, Inc. v. Turner*, 30 N.C. App. 686, 228 S.E. 2d 478 (1976). *See* G.S. 1-485, and G.S. 1A-1, Rule 65.

On appeal we are not bound by the findings or ruling of the court below in injunction cases, but may review the evidence on appeal. However, there is a presumption that the judgment entered below is correct, and the burden is upon appellant to assign and show error. *Pruitt v. Williams, supra; Realty Corp. v. Kalman*, 272 N.C. 201, 159 S.E. 2d 193 (1967); *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116 (1953); 7 Strong's N.C. Index 3d *Injunctions* § 12.1 (1977).

The plaintiff in his complaint alleges that defendants are engaging in a pyramid distribution scheme in violation of G.S. 14-291.2 which provides as follows:

"*Pyramid and chain schemes prohibited.* — (a) Any person who shall establish, promote, operate or participate in any pyramid distribution plan, program, device or scheme whereby a participant pays a valuable consideration for the opportunity or chance to receive a fee or compensation upon the introduction of other participants into the program, whether or not such opportunity or chance is received in conjunction with the purchase of merchandise, shall be deemed to have participated in a lottery and shall be punished as provided for in G.S. 14-290.

(b) 'Pyramid distribution plan' means any program utilizing a pyramid or chain process by which a participant gives a

valuable consideration for the opportunity to receive compensation or things of value in return for inducing other persons to become participants in the program;

'Compensation' does not mean payment based on sales of goods or services to persons who are not participants in the scheme, and who are not purchasing in order to participate in the scheme; and

'Promotes' shall mean inducing one or more other persons to become a participant.

(c) Any judge of the superior court shall have jurisdiction, upon petition by the Attorney General of North Carolina or solicitor of the superior court, to enjoin, as an unfair or deceptive trade practice, the continuation of the scheme described in subsection (a); in such proceeding the court may access a civil penalty against any defendant found to have engaged in the willful promotion of such a scheme with knowledge that such conduct violated this section, in an amount not to exceed two thousand dollars ($2,000) which shall be for the benefit of the general fund of the State of North Carolina as reimbursement for expenses incurred in the institution and prosecution of the action; and the court may appoint a receiver to secure and distribute assets obtained by any defendant through participation in any such scheme.

(d) Any contract hereafter created for which a part of the consideration consisted of the opportunity or chance to participate in a program described in subsection (a) is hereby declared to be contrary to public policy and therefore void and unenforceable."

The defendants argue (1) that the plaintiff's evidence does not support the findings of fact made by the trial court, (2) that the findings of fact fail to show that the Challenge program is a pyramid scheme in violation of G.S. 14-291.2, and (3) that the plaintiff failed to show and the trial court failed to find that irreparable injury has occurred.

### THE FINDINGS OF FACT

The defendants excepted to findings of fact that Glenn W. Turner was a central and controlling figure in the Challenge pro-

gram; that the Challenge presentations were highly emotional with promises of large profits; that the seminars were purchased at a discount by the trainees themselves; and that participants paid a fee to receive a commission upon the recruitment of new prospects.

The evidence tends to show that Glenn W. Turner had some connection with the Challenge Program. Turner's residence and the home office of Challenge, Inc., were located in Orlando, Florida. Challenge's Chairman of the Board admitted that Turner was an unpaid consultant. Turner's wife was on the Challenge payroll. On 7 June 1980 Turner spoke for about an hour at a seminar in Hickory, North Carolina and urged participation in the program. Turner's name was used in the seminars as an inducement to participation in the program. We do not find this evidence sufficient to support the finding that Turner was the central and controlling figure in Challenge, Inc. However, such finding is not necessary or material to the issuance of the temporary injunction by the trial court. The evidence was sufficient to show Turner's participation in the Challenge program and to support the order enjoining him and other defendants from acts and conduct in violation of the pyramid statute, G.S. 14-291.2. Turner has received widespread publicity for his promulgation and operation of other pyramid schemes, including the "Dare to Be Great" (motivational and self-development) and "Koscot Interplanetary" (cosmetics) programs which have been found by the courts to be illegal and in violation of fair trade practices. In reviewing the evidence and determining the issues, we rely entirely on the record on appeal and not on Turner's notorious record as a basis for inferring guilt by association.

The other findings of fact challenged by the defendants which are material to the issuance of the injunction we find to be fully supported by State's evidence presented in the four affidavits and by the testimony of the director of Challenge operations in North Carolina. We see no need to reiterate this evidence previously summarized which has few contradictions as to the plan of operation.

THE CHALLENGE PROGRAM

[1] The defendants argue that Challenge is not an illegal pyramid scheme that violates G.S. 14-291.2 because participants

are not "required" to sell courses to themselves to advance in the organization, and an Independent Sales Agent does not pay valuable consideration for the chance to receive compensation upon the introduction of other participants. This argument is not convincing since the statute is violated if an individual "pays" consideration, regardless of whether he is required to pay it. The Challenge *modus operandi* is such that it would be grossly impractical not to pay the consideration for the opportunity to participate. The evidence is uncontroverted that all participants in North Carolina who advanced in the program did so by purchasing the seminars for themselves in order to meet the $5,000.00 requirement to become an Independent Sales Agent.

Although there are differences, this program closely resembles the pyramid sales operations of Glenn Turner's Dare to Be Great, Inc., (motivational and self-development program), and Koscot Interplanetary, Inc. (cosmetics). In a series of lawsuits, many states enjoined the operation of these two programs as illegal pyramid schemes and deceptive trade practices. *See*, for example, *State ex rel. Morgan v. Dare to Be Great, Inc.*, 15 N.C. App. 275, 189 S.E. 2d 802 (1972); *State ex rel. Turner v. Koscot Interplanetary, Inc.*, 191 N.W. 2d 624 (Iowa 1971); *Dare to Be Great, Inc. v. Commonwealth ex rel. Hancock,* 511 S.W. 2d 224 (Ky. Ct. App. 1974); *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 293 A. 2d 682 (1972). Turner's operations were enjoined for their "headhunting" tactics, which allowed a salesman to make more money by recruiting new prospects than by selling a product. Injunctions were also issued to prevent potential danger to consumers, in that a prospect who paid $5,000.00 for a motivational course believed he was paying not only for the product but also for the chance to earn future income. Therefore, prospects paid more for the product than it alone was worth. *See*, 33 Ohio St. L.J. 676 (1972). The similarities between Challenge and Dare to Be Great cannot be ignored. Dare to Be Great was a series of four self-motivation courses or "adventures" that sold for $5,000.00 and had several levels of salesmen, including one called an "Independent Sales Agent." Both programs recruited new individuals by using manufactured excitement and promises of wealth.

Defendants further argue that the Challenge program is similar to that used by established business concerns, such as

Amway and insurance companies, because the Independent Sales Agents of Challenge do not receive compensation upon the introduction of other participants, but only upon actual sales made by a Sales Trainee. This argument was not fully answered by *State ex rel. Morgan v. Dare to be Great, supra,* the only appellate decision in this State dealing with a violation of G.S. 14-291.2. Therefore, although federal court decisions are not controlling in construing the North Carolina statute, it is appropriate to look for guidance at federal decisions interpreting provisions in the Federal Trade Commission Act which closely parallel G.S. 75-1.1. The Federal Trade Commission found that Koscot, Ger-Ro-Mar and Holiday Magic were illegal pyramid schemes that involved marketing plans which required a person seeking to become a distributor to pay a large sum of money, either as an entry fee ("headhunting" fee) or for the purchase of a large amount of nonreturnable inventory ("inventory loading"). In exchange, the new distributor would have the right to recruit others who would themselves have to pay a large sum of money to join the organization. *In re Koscot Interplanetary, Inc.,* 86 F.T.C. 1106 (1975), *aff'd, sub nom.,* 580 F. 2d 701 (D.C. Cir. 1978); *In re Ger-Ro-Mar,* 84 F.T.C. 95 (1974), *aff'd in part, rev'd in part sub nom.,* 518 F. 2d 33 (2d Cir. 1975); *In re Holiday Magic, Inc.,* 84 F.T.C. 748 (1974). The F.T.C. has found that the Amway plan discussed in *In re Amway Corporation,* Trade Reg. Rep. (CCH) ¶ 21,574 (1979) relied on by defendants does not contain the essential features of an illegal pyramid scheme. In Amway a sponsoring distributor receives nothing from the mere act of sponsoring. It is only when the newly recruited distributor sells to consumers that the Sponsor begins to earn money from his recruit's efforts. Amway prevents inventory loading and encourages the sale of Amway products to consumers with two rules: the "70 percent rule" provides that a distributor must sell at least 70% of the products he bought during a given month and the "10 customer" rule provides that a distributor must make sales to ten different customers each month. Therefore, these safeguards and others not here discussed prevent the Amway plan from being an illegal pyramid scheme. *In re Amway Corporation, supra.*

Defendants' reliance on *Amway* is misplaced because the marketing plan of Challenge does not closely resemble that of Amway and lacks the safeguards inherent in that program. In the

Challenge program, each time a prospect met the requirements to become an Independent Sales Agent by paying $5,000.00 for the seminar package, his sponsoring Sales Agent received a commission on that sale which amounted to a fee for recruiting a new participant. The net effect of this feature of Challenge's program in North Carolina was to give participants, upon the payment of a valuable consideration, the opportunity to receive a fee for the introduction of new participants into the program in violation of G.S. 14-291.2.

Defendants further contend that issuance of the injunction was inequitable because prior to the hearing on 15 September 1980, Challenge, Inc., took action to change their operating procedures and eliminate objectionable features in a meeting of the Board of Directors on 13 August 1980. It appears from the minutes of this meeting that the Board made "recommendations" for modification of its marketing plan, including the elimination of the requirement to sell courses for $5,000.00 within sixty days and the addition of the requirement that a Sales Trainee make at least one of his sales to an outside purchaser. The Board agreed to "present these possible amendments to the marketing program to the officials of North Carolina" and, if they were accepted, the officials could implement them within a reasonable length of time. Since the proposed or recommended changes were not effected prior to the injunction hearing, it is obvious that they were not considered by the trial court, and it would be inappropriate for this Court to rule on what effect, if any, the proposed amendments would have on the legality of the Challenge program. The defendants have elected to appeal from the injunction order before a trial on the merits, and we must limit our decision to the issues raised in the appeal from that order.

IRREPARABLE INJURY

[2] Turning now to defendants' claim that the preliminary injunction was improvidently issued by the trial court because the State failed to show irreparable harm. G.S. 14-291.2 prohibits pyramid and chain schemes such as alleged in the case *sub judice*. Section (c) of this statute provides for injunctive relief from the continuation of such schemes. In addition, G.S. 75-14 provides that the Attorney General has the power to obtain mandatory orders to carry out the provisions of Chapter 75. In *Mayton v. Hiatt's*

*Used Cars*, 45 N.C. App. 206, 262 S.E. 2d 860, *disc. review denied*, 300 N.C. 198, 269 S.E. 2d 624 (1980), this Court stated that public enforcement through the Attorney General was similar to Section 5 of the Federal Trade Commission Act, whose purpose is to vindicate public interest rather than to redress individual grievances. It is not necessary to show actual injury has resulted, but merely that the act or practice complained of adversely affects the public interest. The court continued, "[s]imilarly, there is no suggestion in our own statutory scheme that the Attorney General would be required to prove such actual injury." *Id.* at 211, 262 S.E. 2d at 863. Many other jurisdictions have held that where an injunction is authorized by a statute designed to provide a government agent with the means to enforce public policy, the usual grounds for relief need not be established as long as the statutory conditions exist. *Henderson v. Burd*, 133 F. 2d 515 (2d Cir. 1943); *Conover v. Hall*, 111 Cal. 3d 842, 523 P. 2d 682, 114 Cal. Rptr. 642 (1974); *Ackerman v. Tri-City Geriatric & Health Care*, 55 Ohio St. 2d 51, 378 N.E. 2d 145 (1978); *Bowles v. Barde Steel Co.*, 177 Or. 421, 164 P. 2d 692, 162 A.L.R. 328 (1945); 42 Am. Jur. 2d *Injunctions* § 38 (1969).

The order granting the preliminary injunction is

Affirmed.

Chief Judge MORRIS and Judge WELLS concur.