THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff-Appellant, v. UNIMAX, INC., *et al.,* Defendants-Appellees.

First District (2nd Division)   No. 87—1751

Opinion filed March 29, 1988.—Rehearing denied April 22, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William G. Sullivan, Teresa M. Mooney, and Patricia Kelly, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Stephanie W. Kanwit and Margaret F. Woulfe, both of Chicago, for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff appeals from entry of summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) in favor of defendants. Defendant Unimax, Inc. (Unimax), is an Illinois corporation with its principal place of business in Schaumburg, Illinois. Codefendant Tim Dern (Dern) is president and a cofounder of Unimax. It is comprised of two separate spheres of activity: Unimax Buyers' Service (Buyers' Service) and Unimax Matrix (Matrix), a multilevel marketing plan.

In approximately April 1986, Unimax instituted the Buyers' Service, which enables consumers to purchase products and services at a discount from 13 suppliers which have vendor agreements with Unimax. To participate in the Buyers' Service, a consumer must complete a subscriber application, submit it with an initial payment of $36 and pay thereafter a $36 monthly fee and a $14 annual literature fee. Subscribers are not obligated to buy any merchandise or services and may withdraw from the Buyers' Service at any time and receive a refund of any unused, prepaid fees.

Matrix is designed to sell memberships in the Buyers' Service. One becomes a Matrix "marketer" by signing an "Independent Marketer's Agreement," receiving Unimax training and viewing training tapes, or reading company-approved training materials. A marketer need not purchase any merchandise in order to earn commissions, but earns commissions on the $36 monthly subscription fees paid by new subscribers he sponsors. He must recruit at least three new subscribers and they, as well as the marketer, must be "active," or up to date on their fee payments. A marketer's monthly commission check increases according to a commission schedule on nine levels: the greater the number of subscribers in a marketer's "down-line" organization, the higher the commission the marketer will receive on monthly fee payments made by "his" subscribers. For example, at

level 1, which involves only three subscribers in his down-line organization, the marketer earns only 1% of the $36 monthly fee paid by each of the subscribers or $1.08. At level 9, however, the marketer earns 6% of the $36 fee paid by each of the 19,683 down-line subscribers in his down-line organization, entitling him to earn $42,515.28 per month. The marketer is paid an additional 5% bonus in the ninth level, which could raise the amount payable to $77,944.68 per month.

There is no explicit requirement that an individual must be a subscriber in order to be a marketer or vice versa, although all 10,874 subscribers to the Buyers' Service have also signed marketer agreements, and no one currently participates solely as a marketer in the Unimax scheme. Approximately 10% of the signatories to marketer agreements are "active." Furthermore, a subscriber need not pay an additional fee to become a marketer, but anyone wishing to join Unimax as a marketer alone must pay a $52 "set-up charge."

The State's two-count complaint against Unimax and Dern, individually and as president of Unimax, alleged in count I, that Matrix, as part of the Unimax "plan," constituted a "pyramid sales scheme," in contravention of section 2A(2) of the Consumer Fraud and Deceptive Business Practices Act (the Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 262A(2)). In count II, the State alleged that Matrix also violated section 2A(1) of the Act as a "chain referral sales technique." (Ill. Rev. Stat. 1985, ch. 121½, par. 262A(1).) Appointment of a receiver was sought and the court was asked that defendants be enjoined from selling the right to participate in the plan; provide an accounting; be forced to disgorge all profits obtained in connection with the plan; and be required to pay a $50,000 penalty for violating the Act. See Ill. Rev. Stat. 1985, ch. 121½, par. 267.

In their answer, defendants denied these allegations and raised "affirmative defenses" that the State failed to state a cause of action upon which relief could be granted and the method by which Unimax conducts its business does not constitute a pyramid sales scheme or a chain referral sales technique as those terms are defined by the Act.

Defendants also filed, on March 31, 1987, a motion for summary judgment supported by affidavits, asserting that a "pyramid sales scheme" involves the sale of the right to sell new memberships in the pyramid, "so that investors must make their return not through the sale of products or services, but by encouraging others to invest" in the scheme. Unimax commissions, however, are based solely on the sale of subscriptions and are a percentage of the subscription fee and, unlike a traditional pyramid scheme, Unimax does not require its subscribers to retain inventories of merchandise for purposes of resale to

consumers. Defendants further argued that Unimax is not a "chain referral sales technique." Ill. Rev. Stat. 1985, ch. 121½, par. 262A(1).

The State filed a brief in opposition to defendants' motion for summary judgment on May 1, 1987, and moved the circuit court to strike: (1) all of a Unimax attorney's affidavit; and (2) portions of Unimax' president's affidavit, as well as the motion for summary judgment, as immaterial, conclusory and inadmissible for lack of foundation and as hearsay. Defendants filed a response thereto, accompanied by additional affidavits.

On May 7, 1987, the circuit court granted defendants' motion for summary judgment, finding that "the benefit *** received by a person in the Unimax multi-level marketing plan is the membership in the Unimax [B]uyers' [S]ervice, not the commission received on the sale of buyers club memberships by a person to subscribers," and "this benefit is not primarily based on the inducement of additional subscribers." The court further ordered any opinions of law contained in defendants' affidavits stricken. On May 8, 1987, the court entered an order striking portions of certain affidavits and the attorney's affidavit in its entirety.

The State appeals the order entered May 7, 1987.[1]

■ Summary judgment will be granted where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law (*Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614, 619, 504 N.E.2d 791; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005); however, where reasonable persons may fairly draw differing inferences from facts not in dispute, summary judgment must be denied and the question resolved at trial. (*Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 404, 472 N.E.2d 822.) The movant must show that his right to summary judgment is clear and free from doubt. *Frazier v. Smith & Wesson* (1986), 140 Ill. App. 3d 963, 967, 489 N.E.2d 495.

The State contends the circuit court erred in finding the undisputed facts in this case capable of only one inference and insists the facts presented in the pleadings and affidavits raise the inference of an illegal pyramid scheme in the guise of Matrix.

---

[1]The court's order disposed of the entire two-count complaint. The briefs, however, are devoted to count I of the complaint and whether Matrix constitutes an illegal pyramid scheme; neither party addresses the issue of whether defendants operate a "chain referral sales technique." Under Supreme Court Rule 341(e)(7), points not argued in the briefs are waived. 107 Ill. 2d R. 341(e)(7); see also *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483, 468 N.E.2d 1162.

■ Matrix easily can be viewed as a "plan or operation" whereby the marketer exchanges a "thing of value" by signing the marketer's agreement, which is a form of consideration. Section 1(g) of the Act defines a "pyramid sales scheme" (Ill. Rev. Stat. 1985, ch. 121½, par. 261(g)) as

"any plan or operation whereby a person in exchange for money or other thing of value acquires the opportunity to receive a benefit or thing of value, which is primarily based upon the inducement of additional persons, by himself or others, regardless of number, to participate in the same plan or operation and is not primarily contingent on the volume or quantity of goods, services, or other property sold or distributed or to be sold or distributed to persons for purposes of resale to consumers. For purposes of this subsection, (money or other thing of value) shall not include payments made for sales demonstration equipment and materials furnished on a nonprofit basis for use in making sales and not for resale."

The marketer acquires "the opportunity to receive a benefit or thing of value" by way of commissions, which are themselves "primarily based on the inducement of additional persons" to buy into the Unimax system. Marketers' commissions, therefore, are "not primarily contingent on the volume of goods, services or other property sold or distributed *** to persons for purposes of resale to consumers," but are entirely unrelated to the sale of goods or services available through the Buyers' Service and are obtained only by recruiting more persons into Unimax. See Ill. Rev. Stat. 1985, ch. 121½, par. 261(g).

■ Nevertheless, defendants maintain that the commissions are "primarily contingent" upon the sale of a service, *i.e.*, the Unimax system, and that marketers are not paid "for the mere act of recruiting people to recruit"; therefore, they urge, the system lacks elements which the Federal Trade Commission (FTC) finds fundamental to an illegal pyramid scheme: payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards unrelated to the sale of the product to ultimate users. (*In re Koscot Interplanetary, Inc.* (1975), 86 F.T.C. 1106, 1180, *aff'd sub nom. Federal Trade Comm'n v. Beatrice Foods Co.* (D.C. Cir. 1978), 580 F.2d 701; *State ex rel. Corbin v. Challenge, Inc.* (1986), 151 Ariz. 20, 24, 725 P.2d 727, 731.) FTC decisions identify other characteristics typical of pyramid schemes, such as: (1) requiring a recruit to pay a large sum of money, either as an entry fee (headhunting fee) or for the purchase of a significant amount of non-

refundable inventory (inventory loading) (*State ex rel. Edmisten v. Challenge, Inc.* (1981), 54 N.C. App. 513, 520, 284 S.E.2d 333, 338); (2) pressuring members to recruit more participants; and (3) "endless chains," or down lines, envisioning an infinite number of members. (*State ex rel. Sanborn v. Koscot Interplanetary, Inc.* (1973), 212 Kan. 668, 675-76, 512 P.2d 416, 422-23; *Dare to Be Great, Inc. v. Commonwealth ex rel. Hancock* (Ky. App. 1974), 511 S.W.2d 224, 225-26; *Schrader v. State* (1986), 69 Md. App. 377, 381-85, 517 A.2d 1139, 1141-43; *Koscot Interplanetary, Inc. v. Draney* (1974), 90 Nev. 450, 453-54, 530 P.2d 108, 110.) Defendants maintain that Unimax employs none of these techniques.

■ Although the criteria enunciated by the FTC for identifying an illegal pyramid scheme are entitled to consideration (*People ex rel. Fahner v. Walsh* (1984), 122 Ill. App. 3d 481, 484, 461 N.E.2d 78), they are not controlling. (*Corbin,* 151 Ariz. at 24-25, 725 P.2d at 731-32; Ill. Rev. Stat. 1985, ch. 121½, par. 262.) This court, moreover, has already approved section 1(g) of the Act as the operative definition of a "pyramid sales scheme" in Illinois. (See *People ex rel. Hartigan v. Dynasty System Corp.* (1984), 128 Ill. App. 3d 874, 879, 471 N.E.2d 236.) Furthermore, a pyramid sales scheme need not include an "endless chain" (see *Dynasty,* 128 Ill. App. 3d at 877; Ill. Rev. Stat. 1985, ch. 121½, par. 261(g)), inventory loading or headhunting fees to violate the terms of the Act. Ill. Rev. Stat. 1985, ch. 121½, par. 26(g).

■ Here, the commissions earned by marketers are contingent, not on the sale of any goods or services offered by Unimax, but only on bringing new individuals into the Unimax plan. The greater the number of subscribers a marketer sponsors, the greater his monthly commission check will be. The maximum commission available at each of the nine Matrix levels is conditioned upon full and timely payment by the marketer-sponsor and all of "his" subscribers of their subscription fees. Together, these uncontradicted facts demonstrate as much an opportunity for marketers to earn money "primarily based upon the inducement of additional persons *** to participate in the same plan or operation" (Ill. Rev. Stat. 1985, ch. 121½, par. 261(g)), as they do an opportunity to earn commissions based on the sale of a service.

Defendants admit that all subscribers have signed marketing agreements and that there are not marketers who are not also subscribers, although they insist subscribers aren't required to become marketers and are encouraged to do so only to broaden the membership base and thereby "[afford] purchasers the benefits of [the] buying power of a large group of consumers." The fact that an individual

wishing to sell subscriptions alone must pay a start-up fee, however, while a subscriber can become a marketer at no extra cost, demonstrates an emphasis by Unimax on drawing more individuals into the organization. Several courts interpret greater pressure on members to sponsor new recruits than to market company merchandise as evidence of an illegal pyramid. (*Dynasty,* 128 Ill. App. 3d at 881; *Dare to Be Great, Inc. v. Commonwealth ex rel. Hancock,* 511 S.W.2d at 226; *State v. Solem* (1974), 301 Minn. 282, 286, 222 N.W.2d 98, 100; *State ex rel. Edmisten v. Challenge, Inc.,* 54 N.C. App. at 520, 521, 284 S.E.2d at 337, 338.) Because these material, uncontradicted facts reasonably yield more than one possible inference, the circuit court erred in granting defendant's motion and the summary judgment entered in favor of defendants must be reversed.

■ The circuit court erroneously found that the "benefit or thing of value received by a person in the Unimax multi-level marketing plan is the membership in the *** [B]uyers [S]ervice, not the commission received on the sale of buyers club memberships." The only means by which a marketer may gain a "benefit" through Matrix, however, is to sponsor Unimax subscribers and obtain commissions on their membership fees; membership in the Buyers' Service is obtained separate and apart from a marketer's activities in Matrix. This misunderstanding of Unimax operations further supports the conclusion that the court erred in determining that, as a matter of law, Matrix does not violate the Act.

Accordingly, the circuit court's order of May 7, 1987, granting defendants' motion for summary judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STAMOS and BILANDIC, JJ., concur.