STATE OF NORTH CAROLINA, EX REL., WILLIAM G. ROSS, JR., SECRETARY, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF LAND RESOURCES, Plaintiff,
v.
RONALD G. OVERCASH, Defendant.
No. COA08-127
Court of Appeals of North Carolina.
Filed September 16, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jane L. Oliver, for the State.
Ferguson, Scarbrough & Hayes, P.A., by James R. DeMay, for defendant-appellant.
WYNN, Judge.
North Carolina law explicitly prohibits, without exception, any operator from engaging in mining without first obtaining a permit from the State Department of Environment and Natural Resources (DENR).[1] In the instant case, because we agree with the trial court that Defendant Ronald G. Overcash was engaged in mining without a permit, despite notice that he was in violation of statutory law, we affirm the entry of the injunction barring Mr. Overcash from continuing his mining operation.
On 14 February 2007, the State of North Carolina, through DENR and the Division of Land Resources, filed a complaint for injunctive relief against Mr. Overcash, alleging that Mr. Overcash had violated and was continuing to violate the Mining Act of 1971 by operating a mine without a permit in Cabarrus County. As part of the complaint, the Division of Land Resources noted that it had inspected the site owned by Mr. Overcash on six occasions, dating back to 25 May 2006, and observed mining operations being conducted there by Mr. Overcash and the employees of his company. Nevertheless, the Division of Land Resources had never issued an operating permit pursuant to the Mining Act to Mr. Overcash or any other party for mining operations at that site.
Although the Division of Land Resources issued a Notice of Violation to Mr. Overcash on 11 July 2006, informing him that he was "violating the Mining Act by operating a mine without a permit," subsequent inspections on 23 August 2006, 18 September 2006, 28 November 2006, 20 December 2006, and 17 January 2007, showed that Mr. Overcash continued to operate the mine. The complaint alleged that Mr. Overcash did not have an approved reclamation plan, as required by the Mining Act, nor had he deposited a bond with DENR, also required under the statute. The Division of Land Resources sought a preliminary injunction, ordering Mr. Overcash to immediately cease all mining operations pending obtaining a permit, and requiring him to submit a permit application, reclamation plan, and acceptable performance bond.
After Mr. Overcash responded to the complaint by sending a letter directly to the Assistant Attorney General in charge of the case, rather than filing an answer with the Cabarrus County Clerk of Court, the State obtained an entry of default against him. However, that entry of default was set aside by the trial court in an order filed 23 July 2007, the same day that the hearing on the motion for preliminary injunction was held. After hearing testimony from representatives from the Cabarrus County zoning department, the Division of Land Resources, and DENR, as well as from a neighbor to the site where Mr. Overcash had been mining, from Mr. Overcash, and one of his employees, the trial court entered an order granting the preliminary injunction barring Mr. Overcash from operating the mine until he was properly permitted by the Division of Land Resources.
In its findings, the trial court noted that Mr. Overcash was operating a mining business "remov[ing] sand and gravel from the earth and sell[ing] them," despite not having a permit to operate such mine and indeed "not ever [having] had a permit to operate a mine." The trial court further found that Mr. Overcash's mining operations had "encroached upon the land of Mr. James Reid, an adjoining landowner" and that "because of the mining on Mr. Reid's property, that his property started to cave in; . . . and that Mr. Overcash has not made any effort to repair the damage that he did to the land owned by Mr. Reid[,]" despite promises to do so dating to 2004. Moreover, "the sides of the mine have nearly vertical slopes"; other than one small area where "a series of concrete blocks were placed as a barrier[,]" "[t]he remaining area has no fence between the houses located within a very short distance of feet away from the mine"; and "children of the age 10, 11 and 12 are known to be present in the area from time to time."
The trial court acknowledged Mr. Overcash's assertions that he had attempted to secure a permit to operate a mine at the site in question. However, the trial court also noted that Mr. Overcash first decided not to send a permit application in December 2006 after being "told to not send it unless the mine is shut down" and that, when his employee did send it in May or June 2007, "pages 7 through 12 were missing" and the application likewise "failed to contain essential information such as the reclamation plan, which is required by statute; a bond, which at last observation would have been $190,000; a map; a number of calculations and topographical notations, among other requirements." After the State returned the application as incomplete, Mr. Overcash's employee claimed to have sent in a corrected application in July 2007; however, according to the trial court, "[i]t is unclear . . . where that is, as no copy was produced in court of the corrected permit application, no receipt for certified letter was presented, no documentation at all having been presented concerning that."
Additionally, the trial court specifically found that "there is not an adequate remedy at law which exists because of the danger that is posed to children in the area because of the vertical slopes . . ." and "there is irreparable injury to the adjacent landowner, Mr. Reid." The trial court stated that "Mr. Overcash should not be permitted to dig away the land of the adjoining landowner. This is not an injury that the defendant should be permitted to inflict. . . . This situation is, therefore, occurring on a continuous basis with such frequency that no reasonable redress can be had in a court of law."
Accordingly, the trial court concluded as a matter of law that Mr. Overcash was operating a mine without a permit, creating an unsafe environment for those nearby, that no reclamation plan had been submitted nor bond posted, and that he had caused irreparable injury without an adequate remedy at law. As such, the trial court entered a preliminary injunction enjoining Mr. Overcash, his employees, and his company from "operating a mine known as Odell Materials, Overcash Gravel and Grading and/or Overcash Materials . . . until he is properly permitted as provided by law."
Mr. Overcash appeals, arguing that the trial court erred by entering the injunction against him without engaging in a balancing process to weigh the potential harm to the State if the injunction were not granted against the potential harm to him if it were, and by entering the injunction based on grounds other than those alleged in the complaint, when he had no notice of those other grounds. Mr. Overcash also argues that the trial court erred by entering the injunction against him based on findings including those related to children playing in the area, steep slopes, lack of fences, and damage to Mr. Reid's property, and in light of contradictory instructions from the State as to whether he should close his mine pending review of his permit application. Because we conclude that evidence of Mr. Overcash's ongoing statutory violations was sufficient to support the entry of an injunction against him, we decline to consider his arguments related to the findings of fact entered by the trial court.
Our standard of review from a preliminary injunction is "essentially de novo[,]" Vision AIR, Inc., v. James, 167 N.C. App. 504, 507, 606 S.E.2d 359, 362 (2004) (citation omitted), meaning that "an appellate court is not bound by the [trial court's] findings, but may review and weigh the evidence and find facts for itself." A.E.P. Industries v. McClure, 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983). Nevertheless, "a trial court's ruling on a motion for a preliminary injunction is presumed to be correct, and the party challenging the ruling bears the burden of showing it was erroneous." Analog Devices, Inc. v. Michalski, 157 N.C. App. 462, 465, 579 S.E.2d 449, 452 (2003); see also Wrightsville Winds Homeowners' Assn. v. Miller, 100 N.C. App. 531, 535, 397 S.E.2d 345, 346 (1990) ("[A] decision by the trial court to issue or deny an injunction will be upheld if there is ample competent evidence to support the decision, even though the evidence may be conflicting and the appellate court could substitute its own findings.") disc. review denied, 328 N.C. 275, 400 S.E.2d 463 (1991).
As a rule, "[b]ecause a preliminary injunction is an extraordinary measure, it will issue only upon the movant's showing that: (1) there is a likelihood of success on the merits of his case; and (2) the movant will likely suffer irreparable loss unless the injunction is issued." Vision AIR, 167 N.C. App. at 508, 606 S.E.2d at 362 (citations and quotations omitted). Our Supreme Court has further defined "irreparable injury" as not necessarily "beyond the possibility of repair or possible compensation in damages, but that the injury is one to which the complainant should not be required to submit or the other party permitted to inflict, and is of such continuous and frequent occurrence that no reasonable redress can be had in a court of law." Barrier v. Troutman, 231 N.C. 47, 50, 55 S.E.2d 923, 925 (1949) (citations omitted).
Although a trial court generally "should engage in a balancing process, weighing potential harm to the plaintiff if the injunction is not issued against the potential harm to the defendant if injunctive relief is granted[,]" Kaplan v. Prolife Action League of Greensboro, 111 N.C. App. 1, 16, 431 S.E.2d 828, 835 (1993) (citation and quotation omitted), we have previously held that the State need not show actual injury in a case involving the violation of a statute. See State ex. rel. Edmisten v. Challenge, Inc., 54 N.C. App. 513, 521-22, 284 S.E.2d 333, 339 (1981) (holding that, in a statutory scheme that provides for injunctive relief to enforce its provisions, "[i]t is not necessary to show actual injury has resulted, but merely that the act or practice complained of adversely affected the public interest. . . . Many other jurisdictions have held that where an injunction is authorized by a statute designed to provide a government agent with the means to enforce public policy, the usual grounds for relief need not be established as long as the statutory conditions exist.").
Here, Mr. Overcash's arguments on appeal all concern the trial court's findings as to irreparable injury, namely, the danger to children, the damage to Mr. Reid's property, and the condition of the land, or the lack of findings as to the potential harm to his own business if forced to shut down. However, at no point does Mr. Overcash attempt to deny the basic facts of this case: he operated his mine without a proper permit for a period of at least fifteen months, before being enjoined from doing so. Although Mr. Overcash asserts that he had repeatedly submitted permit applications to the State with no response, he likewise concedes that he continued to run his mining operation without being permitted, as required by the Mining Act. See N.C. Gen. Stat. §§ 74-46 et seq. (2007). Neither did he submit a reclamation plan nor post a bond, both of which also are required under law. Id. §§ 54-55. The law explicitly requires a permit for any mining operation and does not give the Division of Land Resources, DENR, or any State agency the authority to make an exception and allow for mining without a permit. Id. § 50(a).
Because the Mining Act, in addition to civil penalties that may be assessed in the amount of up to five thousand dollars per day of continuing violations, gives the Department of Environment and Natural Resources the authority to "request the Attorney General to institute any appropriate action or proceedings to prevent, restrain, correct or abate any violation of" the legislation, id. § 74-64(a)(1),(5), the State needed to show only that "the act or practice complained of adversely affected the public interest" in order to secure the injunction. See Challenge, 54 N.C. App. at 522, 284 S.E.2d at 339. The trial court's findings as to the ongoing and continuous statutory violations, exacerbated by the danger to children and damage to the neighbor's adjacent property, support the conclusion that Mr. Overcash's mining operation without a permit was injurious to the public interest. Accordingly, we affirm the trial court's granting of a preliminary injunction against Mr. Overcash.
While he will undoubtedly suffer economic harm from having to shut down his business while going through the permit application process, Mr. Overcash had ample opportunity, beginning with a meeting with the Division of Land Resources inspector in May 2006 and in July 2006 with his first notice from the Division of Land Resources, to seek to mitigate this harm by initiating the process and perhaps controlling the timing of the shutdown of his operations. Nevertheless, he elected to continue his mining operations in flagrant violation of the law. Even without the injunction against him, Mr. Overcash is barred by law from operating his mine until he obtains a permit; the injunction merely gives added force to the existing statute.
Affirmed.
Chief Judge MARTIN and Judge HUNTER concur.
Report by Rule 30(e).
NOTES
[1] See N.C. Gen. Stat. § 74-50(a) (2007) ("No operator shall engage in mining without having first obtained from the Department an operating permit that covers the affected land . . .").