THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellant, *v.* CARDET INTERNATIONAL, INC., *et al.,* Defendants-Appellees.

(No. 59947;

First District (3rd Division)—December 5, 1974.

William J. Scott, Attorney General, of Chicago (Maria A. Elden and Howard R. Kaufman, Assistant Attorneys General, of counsel), for appellant.

Freeman and Tingler, of Chicago (Robert A. Tingler and Richard A. Redmond, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, People of the State of Illinois *ex rel.* William J. Scott, Attorney General of the State of Illinois, filed a complaint against Cardet International, Inc. (Cardet), Sheldon Serlin, its president, Al Schwarz, its executive vice-president, and M.L.C. Corporation, Inc. (MLC), alleging violations and a conspiracy to violate the Illinois Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 261 *et seq.*). The violation allegedly arose out of the sale and financing of marketing franchises in Cardet. An order was entered on motion of defendant MLC to dismiss the complaint against it. A further order was entered denying plaintiff's motion to modify the dismissal order by deleting the finding that there was no just reason to delay enforcement or appeal (Illinois Supreme Court Rule 304(a)) and for leave to file an amended complaint. Plaintiff appeals from both orders.

On appeal, plaintiff contends that:

"1) The sale of distributorships by a marketing franchiser con-

stitutes the sale of "merchandise" under the Illinois Consumer Fraud Act;

2) The trial court erred in holding that the sale of distributorships and the loans extended to finance the purchase thereof were business transactions and outside the scope of the Illinois Consumer Fraud Act;

3) The Illinois Consumer Fraud Act is applicable to a loan company which commits fraud in connection with the sale of "merchandise" by a third party;

4) The trial court erred in denying plaintiff's motion for leave to file an amended complaint."

■■ The allegations of the complaint which were admitted for the purposes of the motion to dismiss set forth the following facts. Cardet represented itself as being in the marketing of household and personal items and offered the sale of franchises on two levels—distributors and area managers. As to the first, upon the payment of $5,000, a buyer could become a distributor and receive an exclusive territory of 2500 residences in which he could sell Cardet products by distributing catalogs to the homes, and the public would send orders directly to Cardet. The merchandise would then be delivered to the distributor for delivery to the customer. Distributors were to receive a 25% sales commission.

The second level of franchises was that of area manager. Upon payment of $5,000, the area manager would receive an exclusive territory of 50,000 residences from which he was to recruit new distributors. The area managers were to receive from Cardet a graduated fee for each distributor and also a 5% commission on all merchandise orders obtained by each distributor in their territory.

The complaint consisted of three counts, the first of which alleged that Cardet, Serlin and Schwarz made certain misrepresentations of fact to induce the purchase of Cardet franchises which included alleged misrepresentation concerning the organization of Cardet; the affiliation of Dick Butkus (a prominent football player) with Cardet; the financial success of previous distributors and area managers; and Cardet's policy concerning the repurchase of franchises from dissatisfied buyers.

Count II of the complaint was directed against all of the defendants, including MLC, described as an independent loan company which financed the purchase for 47 of the (approximately) 80 franchises sold by Cardet. Defendant MLC allegedly made misrepresentations of fact and concealed other material facts in connection with the making of purchase loans to the buyers of Cardet franchises. The alleged misrepresentations included statements as to the past financial success of Cardet franchisees which enabled early repayment of their loans; the early re-

payments enabled MLC to reduce the monthly payments required on new loans; the only collateral required to secure a purchase loan was the Cardet franchise itself; and MLC was a subsidiary of a bank through which the financing could be handled. The material facts allegedly concealed by defendant MLC included the existence of an agreement between MLC and Cardet by which Serlin and Schwarz would receive money for each loan made to a Cardet prospect in sums varying from $200 to $825 for at least 19 of the loans made by MLC, which payments were added to the total cost of the loans. It was further alleged that MLC concealed the nature of the documents executed to obtain the loans and that the loan from MLC would be secured in part by a mortgage on the home of the Cardet prospect.

Count III of the complaint alleged that all of the defendants conspired to violate the Illinois Consumer Fraud Act. Defendant MLC made a motion to dismiss the complaint for failing to state a cause of action against it and that the Attorney General lacked standing to sue and bring the action. The trial court granted the motion to dismiss on the ground that the Illinois Consumer Fraud Act does not apply to business loans utilized in the purchase of a franchise or business. Thereafter, the trial court denied plaintiff's motion for leave to file an amended complaint. At the hearing, plaintiff did not present a proposed amended complaint but stated that in part its amended complaint would allege that the facts set forth in the original complaint as to MLC constituted a violation of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1971, ch. 121½, par. 137.1 et seq.). Plaintiff appeals from these orders which concern only Counts II and III of the complaint and involve only defendant MLC.

■■ Plaintiff first contends that the sale of distributorships and area managerships by Cardet constituted the sale of "merchandise" under the Illinois Consumer Fraud Act. Merchandise is defined as "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." (Ill. Rev. Stat. 1971, ch. 121½, par. 261 (b).) Although the term "intangibles" has not been previously construed within this statutory definition, it must be assumed that the legislature intended it to be understood in its ordinary sense. "Intangible" has been defined as property which has no intrinsic value but which is representative or evidence of value, such as certificates of stocks, bonds, promissory notes and franchises (*In re Estate of Berman* (1963), 39 Ill.App.2d 175, 179, 187 N.E.2d 541.) Cardet's licensing agreements provided that the buyers of distributor and area manager positions acquired the right to use the Cardet trade name, the good will of Cardet, and certain operational services to facilitate the carrying on of whichever type of fran-

chise was purchased. Clearly, the operational services which a buyer was to receive from Cardet are expressly included within the definition of "merchandise" in section 1(b) of the statute (Ill. Rev. Stat. 1971, ch. 121½, par. 261(b)). Good will and the right to the use of a trade name each constitute property. (*United States Ozone Co. v. United States Ozone Co.* (7th Cir. 1932), 62 F.2d 881.) Moreover, each is property which has no intrinsic value of its own but only evidences value. As the sale of Cardet distributorships and area managerships consisted of the acquisition of both services and intangibles, these franchises did constitute "merchandise" under the Illinois Consumer Fraud Act.

Plaintiff next contends that the trial court erred in holding that the Illinois Consumer Fraud Act was inapplicable to the business loans used for the purchase of a franchise. Plaintiff argues that the trial court's construction of the statute is contrary to the express provisions of the statute itself, the legislative intent, and the case law authority. We disagree. The allegations against defendant MLC contained in Counts II and III of the complaint charged violations of section 2 of the Illinois Consumer Fraud Act and the defendants' participation in a conspiracy to commit such violation. The Act provides in pertinent part as follows:

> "AN ACT to protect consumers and borrowers against fraud and certain other practices by or on behalf of sellers and lenders of money and to give the Attorney General certain powers and duties for the enforcement thereof.
>
> \* \* \*
>
> § 1. \* \* \* (b) The term "merchandise" includes any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services;
>
> (c) The term "person" includes any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof;
>
> (e) The term "consumer" means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household or in connection with the operation of his household.
>
> § 2. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement

of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; \* \* \*." Ill. Rev. Stat. 1971, ch. 121½, pars. 261, 262.

■■ It is to be noted that section 2 of the Act does not contain the word "consumer," but employs the word "person" in respect to those protected from unlawful practices. The plaintiff asserts that the omission of the word "consumer" is reflective of a legislative intent that the section should be given a broad construction to afford protection to all buyers of "merchandise." However, by defining "consumer" in section 1(e), it is evident that the legislature intended within the definition of that term that one protected from unlawful practices must not only be a "person" but must also be a person acting in the capacity of a "consumer." Any other interpretation would make the inclusion of a definition of "consumer" in the statute totally unnecessary. This construction also finds support in the legislature's expressly stated purpose of providing an act to "protect consumers and borrowers." Thus, before the question arises of whether the defendants' activities constituted unlawful practices, it must be shown that the purchaser of a Cardet franchise was buying such in the capacity of a "consumer."

Plaintiff cited *Rice v. Snarlin, Inc.* (1970), 131 Ill.App.2d 434, 266 N.E.2d 183, for the rule that the mere characterization of a sale of merchandise as a business transaction will not defeat the applicability of the Consumer Fraud Act. In *Rice*, the plaintiff's daughter contracted with the defendant to be listed in defendant's directory of models which was to be mailed to 500 companies which could directly therefrom retain the services of a model. The alleged violation of the Act consisted of the concealment of the material facts that the directory was merely an advertising flyer which was sent to 500 companies at random without any consideration of their need for models. Although the court did reject without discussion the defendant's contention that the plaintiff's daughter was not a consumer under the Consumer Fraud Act, the central issue in the case was whether the Act authorized private suits for damages. The precise issue here is whether a franchise purchaser was a consumer subject to the Act. Plaintiff maintains that as in *Rice*, the purchaser in the instant case is also a consumer.

Plaintiff argues that even if a Cardet franchise purchaser must be a "consumer" within the statutory definition of that term, such a purchaser would qualify, as the franchise was purchased not for resale but to be carried on as a personal business. If viewed in isolation, the definition of "consumer" in section 1(e) would appear to encompass an individual who makes a purchase of a franchise in that the purchase is

made not with the intention of reselling but for the purchaser's own personal business use. However, plaintiff's complaint was filed on March 25, 1973, under the Consumer Fraud Act as it then provided. On October 1, 1973, an amendment to the Act become effective (Ill. Rev. Stat. 1973, ch. 121½, pars. 261, 262) which provided in pertinent part:

"AN ACT to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce * * *.

* * *

§ 1. * * * (f) The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of the State.

§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

■■ It is apparent that the prior act upon which the allegations against defendants were grounded has been substantially amended to afford protection for not only "consumers and borrowers" but also "businessmen," and not just "in connection with the sale or advertisement of merchandise" but from sharp practices "in the conduct of any trade or commerce." As stated in *Western National Bank v. Village of Kildeer* (1960), 19 Ill.2d 342, 353-54, 167 N.E.2d 169:

"The interpretation placed upon a statute by the legislative department may go far to remove doubt as to its meaning, and it is proper for us to consider the subsequent amendment to a statute in determining the intent and meaning of the statute prior to amendment. [Citations.] The addition of a new provision in a

statute by amendment is an indication of the absence of its implied or prior existence. [Citation.]"

In the instant case, the amendment of the Consumer Fraud Act in 1973, to include protection for "businessmen" acting as such in the conduct of "any trade or commerce," indicates that the legislature did not envision that a purchaser of a franchise would be within the definition of a "consumer" under the previous act. Also significant is the Illinois Franchise Disclosure Act, effective January 1, 1974, which contains preventive and remedial measures to cure sharp practices in the sale and financing of franchises such as are here alleged against defendants Cardet, Schwarz and Serlin. (Ill. Rev. Stat. 1973, ch. 121½, par. 701 *et seq.*)

Plaintiff cites decisions from other jurisdictions wherein consumer fraud acts similar to the prior Illinois act have been held applicable to the sale of franchises. We find the cited cases to be distinguishable. In *Kugler v. Koscot Interplanetary, Inc.* (1972), 120 N.J. Super. 216, 293 A. 2d 682, and *State ex rel. Turner v. Koscot Interplanetary, Inc.* (Ia. 1971), 191 N.W.2d 624, state consumer fraud acts were held applicable to the sale of franchises, but unlike Illinois, neither the New Jersey nor Iowa act contained definitions of "consumer." In *State ex rel. Sanborn v. Koscot Interplanetary, Inc.* (1973), 212 Kan. 668, 512 P.2d 416, misrepresentations made to induce the purchase of franchises were held to be violative of the Kansas Buyer Protection Act, which does contain a definition of "buyer" substantially the same as our Act's definition of "consumer." However, unlike the Illinois Act, the Kansas statute had not been amended to reflect a narrower scope to a prior use of the term "buyer."

■■■ We conclude that the purchaser of a Cardet franchise, whether a distributorship or an area managership, was not a consumer within section 1(e) of the prior act. It therefore follows that defendants' activities in extending financing "in connection with" the purchase of these franchises could not result in the prior act becoming applicable to such financing. This is because the defendants' activities, although in connection with the purchase of 47 franchises, were not in connection with their sale to one who came within the Act's protection.

The same rationale defeats any liability on the part of the defendants under Count III of plaintiff's complaint which alleged defendants' involvement in a conspiracy to violate the prior Consumer Fraud Act. The gravemen of the conspiracy charge was the alleged violation of the statute. As the franchise purchases and the loans made in connection therewith are not within the Act, there can be no violations of the statute to sustain Count III.

We hold that the trial court did not err in dismissing the plaintiff's

complaint for failure to state a cause of action under the Illinois Consumer Fraud Act as to defendant MLC. We next proceed to a consideration of whether the trial court erred in denying plaintiff's motion for leave to file an amended complaint.

██ Plaintiff contends that it was reversible error for the trial court to deny its motion for leave to file an amended complaint without considering and making a finding on whether the proposed amendment would cure the defect in the original complaint. Again, we disagree. Following the dismissal of the original complaint, the plaintiff moved for leave to file an amended complaint on the basis that the sales and financing of Cardet franchises were violative of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1971, ch. 121½, par. 137.1 *et seq.*) The plaintiff's motion for leave to amend was not accompanied by a copy of the proposed amended complaint. There is no presumption in the law that a proposed amendment will be a proper one, and it is not error to refuse leave to file an amendment which is not presented to the trial court and where there are no means of determining whether the proposed amendment will be a proper and sufficient one. (*Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727; *Dilcher v. Schorik* (1904), 207 Ill. 528, 69 N.E. 807; *McFarland v. Claypool* (1889), 128 Ill. 397; *Thomas v. Carroll Construction Co.* (1957), 14 Ill.App.2d 205, 144 N.E. 2d 461.) We find no abuse of discretion in the trial court's denying the plaintiff's motion for leave to amend. *Deasey v. City of Chicago, supra.*

For the reasons stated, the orders of the Circuit Court of Cook County are affirmed.

Affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.