## In re Judicial Review of D.P.

[566 A.2d 399]

No. 88-321

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed June 23, 1989

Motion for Reargument Denied July 24, 1989

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Joseph L. Winn*, Assistant Attorney General, Brandon, for Appellant.

*Shirley Markland*, Vermont Legal Aid, Inc., Rutland, for Appellee.

**Gibson, J.** The Department of Mental Health (Department) appeals from a denial of its motion to dismiss the pending judicial review of appellee D.P. by the Special Unit of the District Court of Brandon. We affirm.

Appellee is a profoundly retarded nineteen-year-old woman who was first admitted to the Brandon Training School (Brandon) in 1978. One year later, she was conditionally discharged by the Commissioner of the Department into an "intermediate care facility for the mentally retarded" (ICF/MR) in Middlebury, where she has resided to the present.

In 1980, one year after her conditional discharge into the community, the Department applied for a judicial review of D.P.'s case pursuant to 18 V.S.A. § 8810(b), now 18 V.S.A. § 8834. Nothing of substance occurred on the application until 1987, when the Department moved to dismiss the judicial review on the ground that the Brandon District Court lacked

subject matter jurisdiction since appellee had already been discharged (albeit conditionally) from Brandon. The court denied the motion and granted the Department leave to take an interlocutory appeal.

The issue on appeal, as framed by the Department, is this: When does the judicial review process set forth at 18 V.S.A. § 8834 end? The Department contends that an individual's conditional discharge from Brandon into a community placement ends the process, while appellee asserts that her right to judicial review continues until such time as she is absolutely discharged from the Commissioner's custody.

I.

The Legislature has enacted a comprehensive statutory scheme that applies to mentally retarded individuals committed to the custody of the Commissioner of Mental Health. The provision governing conditional discharge is found in subchapter 1:

§ 8833. Conditional discharge

The commissioner may grant a conditional discharge from the training school to those persons. who in his judgment may be safely and properly cared for in the places from where they were admitted, or other suitable places approved by the commissioner, and may revoke a conditional discharge for cause....

Regulations have been promulgated by the Commissioner to implement conditional discharges into community placements and to regulate revocations of such placements.

The provisions regarding judicial review are lengthier:

§ 8834. Judicial review; release and discharge

(a) A student of the school may be discharged therefrom by the commissioner or by a district judge upon an application and hearing as provided in this section.

(b) Application for judicial review shall be made by the commissioner ... if no application has been made pursuant to this section, within the preceding two years.... The application shall be made to the special unit of the district court at Brandon....

. . . .

(e) If, upon completion of the hearing and consideration of the record, the court finds at the time of the hearing that the person admitted satisfies the criteria for initial admission to the training school, his continued admission to the training school is in accordance with the law, and he is receiving care, treatment, education, habilitation and remedial care which is appropriate and which does not appear upon reasonable inquiry to be available to him in a less restrictive environment, then the court shall order that the person's admission shall continue.

(f) If the court does not order the person's admission to continue, it may order further hearings or may appoint experts or may order that the person be discharged. An order of discharge may be conditional or absolute and may have immediate or delayed effect.

The Department argues that these statutes demonstrate the Legislature's intention that judicial review be mandated only when the issue is one of continued admission versus "some form of discharge." Once the issue of discharge, in whatever form, has been decided "in favor of the student,"[1] there is no further requirement for a state-initiated judicial review of treatment. Instead, it argues that review of treatment decisions must be had under 18 V.S.A. § 8837, which gives jurisdiction to the superior court.[2] The plain meaning of § 8834, it contends, is that judicial review was designed to address the controversy arising when the Commissioner advocates an individual's continued placement at Brandon and the individual, an interested person, or legislative policy demands review of that determination.

---

[1] The Department's argument does not acknowledge that a mentally retarded person's continued admission may, at times, be more "in his favor" than conditional placement in the community or absolute discharge from the Commissioner's custody.

[2] 18 V.S.A. § 8837(b) provides that

[a]fter the exhaustion of available administrative remedies, an interested person or a mentally retarded person designated in section 8835 of this title may bring an action in the superior court ... to enforce the provisions of sections 8835 and 8836 of this title.

## II.

■■ In cases involving statutory construction, the primary objective is to ascertain and give effect to the intention of the Legislature. *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984). If the meaning of the statute is plain on its face, there is no need for construction; if, however, doubts exist or if the statute is ambiguous, legislative intent should be gathered from a consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law. *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). Here, because of the continued authority retained by the Commissioner over a conditionally discharged individual, the statute is not clear as to the effect of such a discharge on the statutory mandate that judicial reviews under § 8834 be conducted on a periodic basis.

■ In determining legislative intent, it is instructive to review pertinent legislative history and the totality of legislative action on a subject. *In re Judy Ann's Inc.*, 143 Vt. 228, 231, 464 A.2d 752, 754 (1983).

■ Chapter 206 of Title 18 was first introduced into the Legislature as Senate Bill 207 in 1980. While testimony before the Senate Health and Welfare Committee did not specifically address the issue at bar, the Attorney General's office took the position that individuals who were conditionally discharged from Brandon were still "in the custody of the superintendent of the training school."[3]

Chapter 206 as enacted into law in 1980 was originally comprised only of §§ 8820–8834, what is now subchapter 1 of the statute. Subchapter 2 (§§ 8835–8838), which was added in 1983, grew out of Senate Bill 164. The original version S. 164 proposed the formation of a lay committee, composed of parents of Brandon residents, to review applications for conditional discharge prior to the holding of a full judicial

---

[3] Hearing before the Senate Health and Welfare Committee, Feb. 12, 1980, transcript at p. 62. We note that testimony before a legislative committee is inconclusive and, standing alone, cannot justify "'deviation from the plain language of a statute.'" *Vermont Development Credit Corp. v. Kitchel*, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988) (quoting *United States v. Oregon*, 366 U.S. 643, 648 (1961)).

review. This provision was deleted in committee on the Department's representation that parents' input was more appropriately solicited through informal proceedings.[4]

Senate Bill 164 did, however, succeed in codifying the Department's existing policies regarding mentally retarded individuals' rights to treatment. Section 8835 provides that

> [t]he commissioner shall ensure that ... the following are maintained for each mentally retarded person placed in his custody ... and for each mentally retarded person placed in a residential facility established by the commissioner:
>
> (1) a current individual program plan; and
>
> (2) appropriate and specific support personnel and services ... to implement such plan, including but not limited to health, dental and medical consultants, counseling and programs for social needs, physical and speech therapy, occupational training, educational services, work opportunities and recreational activities.

Periodic reports on the status of services provided under § 8835 are required, as is on-site visitation and inspection of all residential placements. 18 V.S.A. § 8836. Mentally retarded individuals and other interested persons may move to enforce treatment and monitoring rights under §§ 8835 and 8836 by bringing an action in superior court after exhausting available administrative remedies. 18 V.S.A. § 8837.

It is clear from the hearings on S. 164, most of which occurred before the Senate Health and Welfare Committee, that §§ 8835 and 8836 were intended simply to codify procedures already informally in effect within the Department. The Acting Commissioner of Mental Health testified that these treatment rights were an issue discrete from those arising under the judicial review provision of § 8834, the emphasis being on "quality assurance procedures" rather than placement.[5] Judicial review, on the other hand, was consist-

---

[4] See transcript of hearing before the Senate Health and Welfare Committee, March 10, 1983.

[5] Hearing before the Senate Health and Welfare Committee, March 8, 1983, transcript at p. 52.

ently characterized to the legislators as focusing on issues of placement.[6]

The Department itself thus has consistently maintained that judicial review was not intended to be simply a mechanism for the Commissioner to discharge residents and thereby discharge all the Department's legal duties and obligations. In fact, the Commissioner's continuing obligations to individuals conditionally discharged into the community were explicitly recognized at one committee hearing, at which the Acting Commissioner was asked to distinguish between placement at Brandon and placement in an ICF/MR. He replied,

> The standards are the same and the statute requirements are the same and the program requirements are the same. You have to have access to dental care, medical care, so forth and so on. From the client's—the resident's point of view it's a very simple principle.... You're in a six-place facility, you're in a normal community.[7]

When queried as to how long such supervision continues, the Acting Commissioner responded: "Until we go back into court and declare they are no longer in need of protective services ...."[8]

The legislative history of chapter 206 and its application by the Department clearly indicate that there is little difference between an individual residing at Brandon Training School and one who has been placed in a residential setting in the community, save for his or her physical location. A person conditionally discharged is still in the Commissioner's custody, his or her conditional discharge can be revoked at will without notice, and the Commissioner is still charged with providing the same quality of treatment as if the person were yet

---

[6] See, e.g., hearing before the Senate Health and Welfare Committee as to H. 213 (House version of S. 164), March 3, 1983, transcript at p. 49; hearing before Senate Health and Welfare Committee on March 10, 1983, transcript at p. 37; hearing before House Health and Welfare Committee, March 15, 1983, transcript at p. 4 ("The process of judicial review simply determines eligibility for community placement.").

[7] Hearing before the Senate Health and Welfare Committee, March 8, 1983, transcript at p. 36.

[8] Hearing before the Senate Health and Welfare Committee, March 8, 1983, transcript at p. 49.

residing at Brandon.[9] Thus, the term "conditional discharge" is something of a misnomer, since there is no "discharge" of the Department's duties or obligations in the traditional sense of the word.

Section 8834 has previously been construed by this Court:

> The statute makes clear, and we have so noted, that it is "an oversimplification to view the issue as merely a choice between continued admission and discharge," for to so limit the district court's disposition would render the state incapable of fulfilling its duty to care for those unable to provide for themselves.

*In re A.C.*, 144 Vt. at 43, 470 A.2d at 1194–95 (quoting *In re M.G.*, 137 Vt. 521, 528, 408 A.2d 653, 657 (1979)). Further, nothing in the plain language of either § 8833 or § 8834 indicates that the Legislature intended to deprive mentally retarded persons of a judicial review of their placements in the event they were conditionally discharged into community settings.

## III.

██ We conclude, as did the trial court, that § 8834 contemplates the continued availability of judicial review, whether state-initiated or commenced by the mentally retarded individual, his attorney or an interested party, unless and until an individual is absolutely discharged from the Commissioner's custody. The purpose of judicial review, which by statute is to occur on a regular basis, is to ensure a continuing examination of the efficacy of an individual's placement, whether at Brandon or in a community setting, so long as the individual is in the Commissioner's care.[10] In the

---

[9] In fact, regulations promulgated by the Commissioner regarding community placements define a "resident" as "[a] person committed to the custody of the Commissioner who has been placed at the Brandon Training School, then conditionally discharged or placed in a community setting." See "Policy Pertaining to Hearings Upon Alteration of Brandon Training School Community Placements," section II(F).

[10] Indeed, restricting § 8834 to determining only whether an individual's placement in Brandon is proper would be to render the statutory scheme— comprehensive care to Vermont's mentally retarded individuals—ineffective. Under the Department's interpretation, a mentally retarded person

course of the review, treatment issues may properly be heard by the court. § 8834(e).[11]

■ Where treatment is the *sole* issue, that is, where there is no dispute as to appropriate placement, judicial review under § 8834 is not the proper route. In that event, the Legislature has expressly provided a mechanism for review through the administrative process and the superior court. § 8837.

■ The legislative scheme is broad and comprehensive. Under § 8837, an individual dissatisfied with his treatment plan may take advantage of administrative remedies and, ultimately, court enforcement of his or her rights under §§ 8835 and 8836. At the same time, the individual is guaranteed a periodic, state-initiated judicial review of his or her placement, whether it be at Brandon or in the community, to ascertain the continuing propriety of the placement to ensure that it is the least restrictive environment necessary. We therefore conclude, as did the trial court, that under § 8834, the Brandon District Court has subject matter jurisdiction over a judicial review involving an individual who has been conditionally discharged by the Commissioner but who has not been absolutely discharged.

*Affirmed.*

---

who had no attorney or "interested person" working on his or her behalf could conceivably languish in a community setting forever, without the placement in such a residence ever being subject to independent judicial review.

[11] Because the judicial review process is mandated to take place periodically, and must be initiated by the Department if the student fails to do so, any liberty interests implicated in a conditional discharge will be protected by the procedural safeguards attendant upon the review. See 18 V.S.A. § 8834.