# State of Vermont v. International Collection Service, Inc.

[594 A.2d 426]

No. 89-300

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed May 24, 1991

*Jeffrey L. Amestoy,* Attorney General, and *Elliott M. Burg* and *Lisa L. Barrett,* Assistant Attorneys General, Montpelier, for Plaintiff-Appellant.

*M. Jerome Diamond* and *Kimberly R. Elia* of *Diamond & Associates, P.C.,* and *David S. Putter* of *Saxer, Anderson, Wolinsky & Sunshine,* Montpelier, for Defendant-Appellee.

*Jay C. Shaffer,* Acting General Counsel, and *Ernest J. Isenstadt,* Assistant General Counsel, Washington, D.C., and *Phoebe D. Morse,* Director, Boston Regional Office, Boston, Massachusetts, for amicus curiae Federal Trade Commission.

**Dooley, J.** The State of Vermont appeals from the Washington Superior Court's dismissal of its consumer fraud action

against defendant, International Collection Service, Inc. (ICS). The court held that the actions complained of did not fall within the Consumer Fraud Act, 9 V.S.A. §§ 2451–2479. We hold that the dismissal was erroneous and reverse.

Defendant ICS is a debt collection agency based in Williamstown, Vermont. All of its customers are businesses, the majority of which are located out-of-state. The State of Vermont brought this action, alleging that ICS engaged in unfair and deceptive practices in its efforts to solicit new clientele. The trial court granted defendant's motion to dismiss, concluding that the Attorney General had no authority to bring an action to restrain unfair or deceptive practices by a business in its transactions with business customers. The court concluded: "The overall and interwoven fabric of the statute persuades this court that the Attorney General was not authorized by the legislature to bring a suit on behalf of businesspersons for consumer fraud." The sole issue on appeal is whether the trial court erred in this conclusion.

The State argues that the Act on its face authorizes the Attorney General to bring an action regardless of the status of the victim and that relevant federal and state precedent supports this view. We look first to the language of the relevant statutes.

Two sections of the Act are central to this action. First, the basic prohibition of the Act is contained in 9 V.S.A. § 2453(a), which provides that "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." Nowhere does the statute expressly limit the terms "unfair or deceptive acts or practices in commerce" to transactions between businesses and consumers. The second is the public enforcement mechanism for the Act, 9 V.S.A. § 2458(a), which provides:

> Whenever the attorney general or a state's attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 2453 of this title to be unlawful, . . . and that proceedings would be in the public interest, the attorney general, or a state's attorney if authorized to proceed by the attorney general, may bring an action in the name of the state against such person to restrain . . . the use of such method, act or practice . . . .

Nothing in this section limits the Attorney General's power to bring an action based on the status of the victim. Under the plain wording of the section, the Attorney General is authorized to bring an action on behalf of aggrieved victims when (1) he has reason to believe that any person is using or is about to use any method, act or practice declared unlawful, and (2) such an action would be in the public interest. There are no other express limitations on the types of activities against which the Attorney General may take action.

Although our overall aim is to give effect to the intent of the legislature, we must look first to the plain meaning of the statutory wording. See *Wolfe v. Yudichak*, 153 Vt. 235, 239, 571 A.2d 592, 595 (1989). Nothing in the statutory wording limits the victims who may be protected by the Attorney General to exclude businesses.

Recognizing that a statutory scheme must be read in pari materia, *id.* at 240, 571 A.2d at 595, defendant advances two main reasons why the Act protects only individual consumers: (1) the title and other sections of the Act show that it is intended to protect only individual consumers but not business persons, and (2) § 5(a)(1) of the Federal Trade Commission Act, to which Vermont courts must look in interpreting the Vermont Consumer Fraud Act, see 9 V.S.A. § 2453(b), protects individual consumers but not businesses.

The title containing the Act is entitled "Consumer Fraud." It contains numerous references to consumers and a definition of the term "consumer."[1] Although the public enforcement section, § 2458(a), makes no reference to consumer victims, the private remedy section, § 2461(b), is specifically limited to consumer plaintiffs. The latter statute provides:

> Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains

---

[1] 9 V.S.A. § 2451a(a) defines "consumer" to include "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his trade or business but for his use or benefit or the use or benefit of a member of his household or in connection with the operation of his household or a farm whether or not the farm is conducted as a trade or business."

damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title . . . may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer.

Based on the definition of "consumer," see 9 V.S.A. § 2451a(a), it is clear that there is no private right of action under § 2461(b) for business victims of deceptive or unfair acts or practices.[2] Further, restitution, one of the remedies available to the Attorney General in a § 2458(a) action, is expressly provided for consumer victims.[3] Thus, the Attorney General can seek "restitution of cash or goods" but only on behalf of "a consumer or a class of consumers." 9 V.S.A. § 2458(b)(2).[4]

Although certain parts of the Act apply only to consumers, we are unable to conclude that the entire Act is so limited.[5] The stated purpose of the Act is broader, to "protect the public, and to encourage fair and honest competition." 9 V.S.A. § 2451. It is reasonable for the legislature to determine that business per-

---

[2] Conversely, our prior cases, cited by defendant to show that deception cases require proof of "consumer impact," dealt solely with consumer victims and neither addressed nor were determinative of the issue at hand. See, e.g., *State v. Stedman*, 149 Vt. 594, 596–97, 547 A.2d 1333, 1335–36 (1988); *Poulin v. Ford Motor Co.*, 147 Vt. 120, 124–25, 513 A.2d 1168, 1171–72 (1986).

[3] Although the remedy is limited to consumer victims, § 2458(b) states that its itemized list of remedies is not exclusive. Accordingly, we do not decide whether § 2458(b) allows the State to seek such restitution for businesses.

[4] Other sections limited to consumers are: § 2454, providing a cancellation right in home solicitation sales; § 2455, limiting holder-in-due-course rights for holders of notes and similar instruments given in consumer transactions; and § 2456, prohibiting confessions of judgment in consumer transactions.

[5] Defendant also argues legislative intent from a committee hearing of an amendment to the Act to protect farmers. While there is a place for legislative history in statutory construction, see, e.g., *In re D.P.*, 152 Vt. 184, 188–90, 566 A.2d 399, 401–03 (1989), we find the committee hearing excerpts to be ambiguous. Further, the hearing is on an amendment to another section rather than on the language before us. We give little weight to this legislative history.

sons have adequate private remedies in existing laws, while special, new remedies are necessary to protect individual consumers. See *Gramatan Home Investors Corp. v. Starling*, 143 Vt. 527, 536, 470 A.2d 1157, 1162 (1983) ("The relief available under § 2461(b) to a consumer who has been victimized by an unfair or deceptive commercial practice was fashioned in order to promote and encourage prosecution of individual consumer fraud claims."). For example, the legislature may have concluded that individual consumer plaintiffs need the incentive of being able to recover attorney's fees as provided in § 2461(b) while businesses do not need this assistance or can contract for this recovery. Further, we note that enforcement actions brought by the Attorney General must be found to be "in the public interest," 9 V.S.A. § 2458(a), although private enforcement actions brought by consumers do not have to meet this standard. The legislature may have decided that business-to-business disputes do not ordinarily have a public interest component to warrant a statutory private remedy. See *Lightfoot v. MacDonald*, 86 Wash. 2d 331, 334, 544 P.2d 88, 90 (1976) (en banc) (discussing "public interest" requirement for both public and private actions under statute substantially similar to Vermont Act: "A breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest.").

Nothing in the provisions of the Act that reference consumers persuades us to abandon the plain meaning of the words on which the State relies. Accordingly, we turn to defendant's second argument.

The Act prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). These terms are nowhere defined. Rather, the legislature stated that "in construing subsection (a) of [section 2453], the courts of this state will be guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States." 9 V.S.A. § 2453(b). Section 2451, the purpose clause, notes that "[t]he purpose of this chapter is to complement the enforcement of federal statutes and decisions."

Defendant fails to point to, nor are we able to locate, any federal precedent which indicates expressly that the prohibi-

tion against "unfair or deceptive acts or practices" contained in § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1973), does not apply to fraudulent transactions where the victim is a business. In contrast, the State and the Federal Trade Commission (FTC), as amicus, cite a wealth of federal cases involving exactly this class of transactions. See, e.g., *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346–47 (9th Cir. 1989) (affirming preliminary injunction against seller of promotional merchandise to small businesses); *Lee v. FTC*, 679 F.2d 905 (D.C. Cir. 1980) (affirming FTC cease-and-desist order against firm providing promotional services to inventors); *United States Retail Credit Ass'n v. FTC*, 300 F.2d 212 (4th Cir. 1962) (upholding cease-and-desist order against corporation offering debt collection services to businesses and professionals); *United States Ass'n of Credit Bureaus v. FTC*, 299 F.2d 220 (7th Cir. 1962) (modifying, but otherwise enforcing, FTC cease-and-desist order against provider of collection services to businesses and professionals); *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1296–97 (D. Minn. 1985) (ordering permanent injunction against seller of business opportunities); *In re Success Motivation Institute, Inc.*, 101 F.T.C. 687 (1983) (misrepresentation in sale of franchises and distributorships).

Despite the apparently long-settled practice of the FTC to protect business victims of unfair or deceptive acts, defendant maintains that the federal counterpart to our Act simply does not apply to commercial transactions. Defendant relies heavily on a 1980 letter from the FTC to two members of the United States Senate Committee on Commerce, Science, and Transportation. See Letter from FTC to Senators Ford and Danforth ["FTC letter"], reprinted in Averitt, *The Meaning of "Unfair Acts or Practices" in Section 5 of the Federal Trade Commission Act*, 70 Geo. L.J. 225, 288–96 (1981).

We might give more weight to the letter as the expression of the FTC's position, but the FTC has filed a brief amicus curiae in this Court stating a position consistent with the above precedents and inconsistent with defendant's interpretation of the letter. We must give substantial deference to the FTC's express position as outlined in its brief. See *Lawrence County v. Lead-Deadwood School Dist.*, 469 U.S. 256, 262 (1985) (citing Brief for United States as Amicus Curiae, and stating that "[t]he in-

terpretation of an agency charged with the administration of a statute is entitled to substantial deference, if it is a sensible reading of the statutory language, which it surely is in this case, and if it is not inconsistent with the legislative history"). We are more comfortable in relying on the FTC position as expressed clearly in its brief filed in this Court than as expressed ambiguously in a letter, of uncertain legal effect, to two members of Congress. Whatever the effect of the letter within the FTC, we are reluctant to view it as a definitive FTC interpretation of the Federal Trade Commission Act, as contemplated by our law.

In any event, we conclude that the letter is not inconsistent with the view of the Federal Trade Commission Act contained in the FTC's amicus brief. The letter was intended only to clarify the FTC's position on the meaning of "unfairness" for purposes of 15 U.S.C. § 45(a)(1). See Averitt, *supra*, at 289. As the Commission indicated, "[t]he agency's jurisdiction over 'deceptive acts or practices' is . . . not discussed in this letter." *Id*. n.4. This case involves alleged deceptive acts or practices.

Defendant emphasizes that the letter sets out a standard for unfairness and, implicitly, deceptiveness, premised in part on "consumer injury." In discussing the requirement of "consumer injury," however, the letter cited approvingly to an earlier FTC statement directed to sales of franchising and business opportunities. *Id*. at 292 n.17 (citing Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59, 614 (1978) (regulation now codified as 16 C.F.R. § 436.1 (1991)). Obviously, this statement is aimed at deceptive practices involving business customers. It is clear that the FTC letter is not an authoritative statement on the FTC's jurisdiction over deceptive acts or practices where the victim is a business.

We conclude that the FTC's position on the applicability of the federal scheme to intra-business transactions, as articulated in its amicus brief and as supported by established practice, reflects an accurate interpretation of § 5(a)(1) of the Federal Trade Commission Act. Since our interpretation of the meaning of "deceptive acts or practices" under § 2453 must be guided by established precedent and practice under its federal counterpart, this is further support for the State's interpretation of the Act.

One other source of law has been argued by both parties—that is, the resolution of this and similar issues in other states. The Vermont statute is taken from an alternative of the Unfair Trade Practices and Consumer Protection Law as proposed by the Federal Trade Commission. See National Consumer Law Center, Unfair and Deceptive Acts and Practices § 3.4.1.2.1 (2d ed. 1988). Fourteen states have adopted this version, see *id.*, commonly known as the mini-FTC act. In these states, the statement of the prohibition against unfair and deceptive acts and practices is taken verbatim from § 5(a)(1) of the Federal Trade Commission Act. In most of these states, the courts are instructed to look to interpretations of the Federal Trade Commission Act by the FTC or federal courts as guidance in construing their respective state acts. All of the states allow for enforcement by a public enforcement agency, usually by injunctive relief, and in certain circumstances provide for a private damage remedy for persons victimized by the unfair or deceptive act or practice.

Of the states using the same model as Vermont, only two appear to have addressed the power of the public enforcement authority to bring an action under the statute to protect businesses. The Illinois Appellate Court originally ruled that the state had no power to bring an action with respect to an unfair or deceptive practice used on a business. *People ex rel. Scott v. Cardet International, Inc.*, 24 Ill. App. 3d 740, 745, 321 N.E.2d 386, 391 (1974). The Illinois statute, as it existed at the time, was not modeled after the Federal Trade Commission Act and covered only sales of merchandise. It contained a statement of purpose which indicated that the state act protected only consumers and borrowers, and the act defined consumers to include only those who purchased for personal or household use. The court held that the act did not cover sales of franchises because the sale was not a consumer transaction. *Id.* at 747, 321 N.E.2d at 392. Illinois subsequently amended its statute to one based on the Federal Trade Commission Act, and the Illinois Appellate Court has since held that the attorney general can sue for any person or business victimized by unfair or deceptive

business practices. *People ex rel. Fahner v. Walsh*, 122 Ill. App. 3d 481, 485–86, 461 N.E.2d 78, 82 (1984).[6]

Precedent from the second state that has dealt with the issue, Florida, is more helpful. The Florida statute, like that of Vermont, allows a private damage remedy for consumers only. See Fla. Stat. Ann. § 501.211(2) (West 1988). Also, as in Vermont, the public enforcement agency can obtain a money damage award for reimbursement for consumers only. See Fla. Stat. Ann. § 501.207(1)(c) (West 1988).[7] In *Black v. Department of Legal Affairs*, 353 So. 2d 655, 656 (Fla. Dist. Ct. App. 1977), the Florida court held that the enforcing agency could not seek a reimbursement remedy for persons who had purchased food vending machines from the defendant because the sale was not a consumer transaction. However, the court specifically affirmed an injunction against defendant's unfair and deceptive practices granted to the public enforcement agency. *Id.* The case necessarily holds that the public enforcement agency can obtain an injunction in circumstances where the persons victimized by the unfair and deceptive practices cannot obtain relief because they were not consumers.[8]

The remaining states have not addressed the limits on the power of the public enforcement agency. It is instructive, however, that most of these states allow private actions for businesses that are victimized by unfair and deceptive practices. See *McTeer v. Provident Life & Accident Ins.*, 712 F. Supp. 512, 515 (D.S.C. 1989) (South Carolina act applies to "transactions

---

[6] The Illinois experience is of limited relevance because the amendment to the act was intended to protect "consumers and borrowers and businessmen," *People ex rel. Scott v. Cardet International, Inc.*, 24 Ill. App. 3d at 746, 321 N.E.2d at 392, and the act allows a private damage remedy for any person who suffers damage as a result of a violation. Ill. Ann. Stat. ch. 121 ½, para. 270a(a) (Smith-Hurd Supp. 1990).

[7] The act is now broader and allows the public enforcement agency to seek actual damages for the consumer.

[8] Courts have found other acts, not modeled on the Federal Trade Commission Act, to cover businesses although the private remedy is limited to consumers. See *Commonwealth ex rel. Stephens v. North American Van Lines*, 600 S.W.2d 459, 460-62 (Ky. Ct. App. 1979); *In re Jungkurth*, 74 B.R. 323, 335 (Bankr. E.D. Pa. 1987). Although these cases help the State, they are less persuasive because the acts involved are substantially different from the Vermont Act before us.

between businesses or commercial entities"); *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 566–67, 473 A.2d 1185, 1190 (1984) ("The General Assembly has not seen fit to limit expressly the statute's coverage to instances involving consumer injury, and we decline to insert that limitation."); *Beerman v. Toro Mfg. Corp.*, 1 Haw. App. 111, 116–17, 615 P.2d 749, 754 (1980) (act covers consumers and businesses); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 695–96, 322 N.E.2d 768, 775 (1975) (act covers businesspersons who suffer a loss as a result of an unfair or deceptive act or practice by another businessperson); *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 685, 340 S.E.2d 755, 760, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986) (statute protects businesspersons as well as individual consumers); *Anhold v. Daniels*, 94 Wash. 2d 40, 44, 614 P.2d 184, 186 (1980) (commercial investors granted relief under Washington act). There is no indication in any of these states that the courts have felt constrained in protecting victimized businesses by the requirement to follow interpretations of the Federal Trade Commission Act, although the statutes in Connecticut, Hawaii, Massachusetts and South Carolina contain such a requirement. See Conn. Gen. Stat. Ann. § 42-110b(b) (West 1987) (courts must be guided by FTC and federal court's construction of § 5(a)(1) of Federal Trade Commission Act); Haw. Rev. Stat. § 480-3 (1985) (act "shall be construed in accordance with judicial interpretations of similar federal antitrust statutes"); Mass. Gen. Laws Ann. ch. 93A, § 2(b) (West 1984) (courts must be guided by FTC and federal court's construction of § 5(a)(1) of the Federal Trade Commission Act); S.C. Code Ann. § 39-5-20(b) (Law. Co-op. 1984) (same).

Although there are only limited precedents from other states on the issues raised here, what precedents exist support the State's position. No state with a statute similar to ours limits its overall scope to the protection of individual consumers rather than businesses. In some states, as in Vermont, the private remedy is limited to individual consumers, but more often businesses can also sue for damages.

In summary, the State's argument that the Vermont Act allows it to seek relief to protect businesses victimized by unfair

or deceptive acts or practices is supported by the plain meaning of the Act as well as the applicable precedents from the FTC and federal courts and from other states with similar acts. The trial court's dismissal of the State's complaint was in error.

*Reversed and remanded.*