State v. A&S Collections Associates, Inc., No. 521-8-05 Wncv  (Toor, J., Dec. 16, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS

| | |
|---|---|
| STATE OF VERMONT,<br>  Plaintiff<br><br> v.<br><br>A & S COLLECTION<br>ASSOCIATES, INC., et al.,<br>  Defendants | SUPERIOR COURT<br>Docket No. 521-8-05 Wncv |

RULING ON MOTION OF A&S COLLECTION ASSOCIATES FOR
SUMMARY JUDGMENT

The State has filed this case against A & S Collection Associates, Inc. (A&S) and others, alleging unfair and deceptive practices under the Vermont Consumer Fraud Act. A&S moves for summary judgment.

Relevant Facts

The following facts appear to be undisputed for purposes of this motion.[1] A&S is a Florida corporation with its principal place of business in Williamstown, Vermont. It is in the business of debt collection and check processing. The other defendants in this case are telemarketing companies based in Canada (Telemarketers). A&S began providing

---

[1] A&S did not submit a separate Statement of Material Facts as required by the rules. V.R.C.P. 56(c)(2). Presumably as a result, the State did not submit a formal point-by-point response to the facts listed in the body of the motion. Thus, the court is not bound to deem the listed facts as established as it would if there had been strict compliance with Rule 56. However, the State not having raised any dispute over the facts, the court proceeds on the assumption that they are at this stage undisputed.

what is referred to as "demand draft" services to the Telemarketers in or about May 2005. Demand drafts are unsigned checks that are supposed to be authorized by the holder of the account from which the funds are to be drawn. Instead of a signature, such a check has language stating "Authorized by Account Holder," "Signature Not Required," or similar language.

The demand drafts at issue in this case were printed by A&S using the Magnetic Ink Character Recognition (MICR) code (the numbers that appear at the bottom of regular bank checks) and related information provided by the Telemarketers n electronic file format. After printing the drafts, A&S deposited them in a Chittenden Bank account in Barre, Vermont. When the drafts cleared, the accounts of the consumers were debited. Periodically A&S wired funds from the account to the Bank of Montreal for the Telemarketers. The drafts were processed by A&S both before and after July 1, 2005.

The demand drafts were not pre-authorized in writing by the customers whose accounts were debited. Instead, the Telemarketers sought only verbal authorizations from the customers over the telephone. None of the customers were Vermont residents. Many of the states in which the customers reside do not require written authorization for demand drafts, and instead require only verbal authorization. The solicitations to consumers were done solely by the Telemarketers, not by A&S.

Conclusions of Law

The Vermont Consumer Fraud Act (the Act) makes it an "unfair and deceptive practice" for a telemarketer to "obtain or submit for payment a check, draft or other form of negotiable instrument drawn on a person's [bank] account without the consumer's express written authorization." 9 V.S.A. § 2464(b)(2). Prior to July 1, 2005, it was

apparently also an unfair or deceptive practice to "provide substantial assistance to a telemarketer in violation of subsection (b) of this section when the person or the person's authorized agent knows or consciously avoids knowing that the telemarketer is engaging in [an] unfair or deceptive act or practice in commerce." Id. § 2464(c)[2].

As of July 1, 2005, the Act imposes strict liability on parties who process demand drafts without written authorization:

> It is an unfair and deceptive act and practice in commerce for a party other than a federally-insured depository institution to process for payment from a consumer's [bank] account, in connection with a telemarketer's transaction with the consumer: (1) a check, draft, or other form of negotiable instrument drawn on or debited against such account without the consumer's prior written authorization[.]

Id. § 2464(c)(1). "Process" is defined as follows:

> "Process" includes printing a check, draft or other form of negotiable instrument drawn on or debited against a consumer's [bank] account, formatting or transferring data for use in connection with the debiting of a consumer's account by means of such an instrument or an electronic funds transfer, or arranging for such services to be provided to a telemarketer.

9 V.S.A. § 2464(a)(3). A&S does not meet the definition of "telemarketer." Its actions do meet the definition of "process."

A&S raises two arguments in its motion. First, it argues that the processing done by A&S was "perfectly legal under Vermont law." Motion at 2. Second, it argues that the Consumer Fraud Act applies only to consumers who live in Vermont, and thus is inapplicable here.

---

[2] This section no longer appears either in the bound version or the pocket part of the statute, as it was apparently printed only in the former pocket part. However, the State represents that this is the language of the former version and A&S has not disputed that representation.

## 1. The Legality of the Processing

A&S states in the introduction to the motion that its first argument is that the processing done by A&S was "perfectly legal" under Vermont law. Although A&S provides no argument or discussion of this claim in the body of the motion, it has clarified in its reply that the argument is as follows: because the processing of demand drafts only required telephone authorizations in most of the states in which the consumers resided, the lack of written authorizations was not illegal in those states. Because the transactions involving the authorizations themselves – done by the Telemarketers – were legal in those states, A&S argues, the subsequent processing of those authorizations in Vermont cannot be illegal.

It is undisputed that the Telemarketers did the solicitations in this case, and that A&S merely processed the demand drafts for the Telemarketers, after being provided with the information obtained by the latter. It is also undisputed that the Telemarketers never obtained the written authorizations that Vermont requires.

The court agrees that A&S cannot be found liable for any transactions that occurred prior to July 1 if the State cannot prove that the Telemarketers engaged in a "deceptive act or practice," because processors were at that time liable only if the telemarketer was "engaging in [an] unfair or deceptive act or practice in commerce." 9 V.S.A. § 2464(c). However, whether the actions of the Telemarketers themselves are within the reach of the statute is a question not squarely before the court at this time. Moreover, A&S concedes that some of the other states at issue also required written authorizations. Thus, even if A&S can prove that some of the pre-July transactions were not "deceptive acts or practices" because the other states' laws permitted them, that

4

argument would not resolve the claims involving states that do require written authorizations.

Moreover, for transactions on and after July 1, A&S can be liable for processing drafts "drawn on or debited against such account without the consumer's prior written authorization," regardless of whether the Telemarketers' own acts were illegal. Id. § 2464(c)(1). It is undisputed that A&S processed drafts for payment without the consumer's express written authorization. Thus, regardless of whether the Telemarketers can be found liable under the statute based upon their own conduct outside of Vermont – an issue not before the court today -- A&S can be found liable for its own conduct inside Vermont.[3]

## 2. The Location of the Consumers

A&S argues that the Act cannot apply to this case, where it is undisputed that none of the people whose accounts were debited were Vermont residents. It argues that the statute shows an intent to limit its coverage to Vermont consumers.

The court is not persuaded by A&S's argument. First, it is undisputed that the actions of A&S that are at issue – the processing of the demand drafts – took place in Vermont. A&S has its principal place of business in Vermont. The drafts were deposited in a Vermont bank. The funds A&S then sent to the Telemarketers were wired from the Vermont bank. Thus, if A&S were correct about the scope of the statute, businesses could

---

[3] The State also argues that the complaint asserts an independent non-statutory claim that A&S "made use of" the Telemarketer's fraud by getting a financial benefit from the processing. Supplemental Opposition, p. 3. The court does not see this as an independent non-statutory claim, as the "made use of" language comes directly from the statute and the case on which the State relies was construing the statute. 9 V.S.A. § 2458; State v. Custom Pools, 150 Vt. 533 (1988). Moreover, the complaint describes the count to which the State refers (Count 2) as "Second Count: Unfair and Deceptive Trade Practices under the Consumer Fraud Act."

be situated in Vermont and conduct massive amounts of transactions that would be illegal if directed at Vermont consumers but could not be restricted by the State from so doing so long as they were careful to avoid any Vermont consumers. The court does not view it as likely that the Legislature would have so intended. Whatever Vermont's reputation for disdaining "flatlanders," the Legislature cannot have intended to permit Vermont businesses to so freely prey upon non-Vermonters.

Second, as A&S concedes, the Act does not expressly limit its scope to Vermont consumers only. In fact, it contains certain specific provisions (inapplicable here) in which it does so limit its coverage. *See* 9 V.S.A. §§ 2464a-2464d (the "do not call" list provisions). While A&S argues that this shows an overall intent to be so limited, the court construes it in precisely the opposite way: if the entire statute applied only to Vermont consumers, there would have been no need for the Legislature to specify that in certain specific sections. Moreover, by doing so in certain sections, by implication its intent was different in the other sections. It is a basic tenet of statutory construction that "[w]here the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly." Hopkinton Scout Leaders Association v. Guilford, 2004 VT 2, ¶ 8, 176 Vt. 577, 579 (2004).

The Vermont Supreme Court has previously declined to read into the Act a limitation that is not expressly stated. State v. International Collection Service, Inc., 156 Vt. 540 (1991). As the Court noted, "[a]lthough our overall aim is to give effect to the intent of the legislature, we must first look to the plain meaning of the statutory wording. … Nothing in the statutory wording limits the victims who may be protected by the

6

Attorney General to exclude businesses." <u>Id</u>. at 542 (citation omitted). The same is true here: the language of the statute does not exclude non-resident consumers. Instead, the statute declares that its intent is to protect "the public," not merely Vermont residents. 9 V.S.A.§ 2451.

A&S cites another case for the proposition that the Court has limited the scope of the Act to "this state's citizens." <u>Gramatan Home Investors Corp. v. Starling</u>, 143 Vt. 527, 536 (1983). However, that reference was merely dictum. The Court was pointing to the "protection of the public" language of the statute in determining that attorney's fees were mandated by the statute rather than discretionary with the court. The issue of whether the statute reached beyond "this state's citizens" was neither raised nor decided in that case.

<u>Order</u>

For the foregoing reasons, A&S's motion for summary judgment is denied.

Dated at Montpelier this 15th day of December, 2005.

_____
Helen M. Toor
Superior Court Judge