**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0001n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

In re: MATTHEW LOWELL HOWLAND and )
MEAGAN LARAE HOWLAND, )
)
Debtors. )
)
------------------------------------------------------------------ )
)
PHAEDRA SPRADLIN, )
)
Appellant, )
)
v. )
)
BEADS AND STEEDS INNS, LLC, )
)
Appellee. )
)

**FILED**
Jan 03, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: GUY, BOGGS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this personal bankruptcy case, the trustee seeks to avoid an allegedly fraudulent transfer of property between two third-party corporations. Recognizing her authority only extends to transfers of the *debtors'* property, the trustee argues that the third-party transferor is merely an alter ego of the debtors. She contends that two legal doctrines—either "reverse corporate veil piercing" or "substantive consolidation"—allow her to treat the property as the debtors' and avoid the transfer. We disagree. The trustee may not use Kentucky's veil piercing

doctrine to merge a debtor and its alter ago into a single entity, and she fails to state a claim for substantive consolidation. Accordingly, we affirm.

I.

Matthew and Meagan Howland are the debtors in this personal bankruptcy case. In June 2007, they entered into a contract to buy a 133-acre farm in Lancaster, Kentucky, for $1.6 million. One month later, the Howlands assigned their interest in the purchase agreement to Meadow Lake Horse Park, a limited liability corporation they had recently formed under Kentucky law. They also personally guaranteed the loan Meadow Lake later obtained in order to purchase the farm.

For the next three years, the Howlands operated a horse farm and bed and breakfast on the property. In November 2010, the Howlands made a $760,000 payment on Meadow Lake's mortgage for no consideration. Then, a month later, Meadow Lake sold the property to Beads and Steeds Inns, LLC, a corporation formed by a third party for the sole purpose of purchasing the farm. The purchase price was $800,000, roughly half of what Meadow Lake paid just three years earlier. Along with the sale, the two parties entered into a $1,000-a-month lease agreement (about one-fourth the market rate), which allowed Meadow Lake and the Howlands to continue operating the horse farm and bed and breakfast.

Two years later, saddled with unmanageable debt, the Howlands filed for personal bankruptcy. The bankruptcy court appointed plaintiff, Phaedra Spradlin, as trustee of the debtors' estate. In her role as trustee, Spradlin filed this adversarial action against Beads and Steeds. Spradlin alleged that the December 2010 transfer from Meadow Lake to Beads and Steeds was fraudulent, done to evade the Howlands' creditors.

Beads and Steeds moved for judgment on the pleadings, observing that the trustee alleged that Meadow Lake—not the debtors, personally—engaged in the 2010 transfer. It argued that the trustee therefore failed to state a claim under the governing fraudulent transfer provisions, both of which required a "transfer of an interest of *the debtor* in property." *See* 11 U.S.C. § 544(b)(1) (emphasis added); *see also* 11 U.S.C. § 548(a)(1)(B). The trustee responded that she could pierce the corporate veil in reverse and thereby treat Meadow Lake and the debtors as a single entity.

The bankruptcy court rejected the trustee's argument for two reasons. First, Kentucky has not adopted "reverse" veil piercing, and, therefore, it would be unwise to adopt it as a matter of first impression. And second, even if Kentucky would recognize the doctrine, veil piercing in Kentucky is a form of vicarious liability, not a license to consolidate two entities into one, as the trustee sought to do.

The trustee then moved for leave to file an amended complaint in which she proposed a new theory for treating Meadow Lake and the debtors identically: substantive consolidation. The bankruptcy court denied the motion as futile because, even accepting the allegations as true, the proposed complaint failed to adequately plead a claim for substantive consolidation.[1]

The trustee appealed, arguing that the bankruptcy court erred in rejecting her reverse veil piercing theory and in concluding that she failed to state a claim for substantive consolidation.

---

[1]The proposed complaint also requested any substantive consolidation order be retroactive to Meadow Lake's 2007 formation, and it also sought to allege a new substantive consolidation claim against non-defendants Meadow Lake and the debtors. The bankruptcy court denied relief in both respects. On appeal, the trustee's challenge to these decisions is contingent on the success of her substantive consolidation argument. Given our resolution of that issue, we do not address these additional arguments.

The district court affirmed, echoing the reasoning of the bankruptcy court. The trustee appeals again, renewing the same arguments.

## II.

In a bankruptcy appeal, this court "reviews the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 526–27 (6th Cir. 2002) (bracketing omitted). The decision to grant a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed de novo. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The same standard of review applies to decisions denying a motion for leave to file an amended complaint based on futility. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016).

When a bankruptcy court denies a motion to amend on futility grounds, "the basis for its denial of the motion is its purely legal conclusion that the proposed amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (internal quotation marks omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *D'Ambrosio*, 747 F.3d at 383 (internal quotation marks omitted). Under this standard, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor [will] naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, bracketing, and citation omitted).

## III.

A trustee's basic task in a bankruptcy proceeding is to collect property of the debtor's estate, reduce it to money, and pay creditors in an equitable fashion. *See* 11 U.S.C. § 704(a).

Sections 544 and 548 of the Bankruptcy Code are two arrows in the trustee's quiver; they allow the trustee to enlarge the debtor's estate by invalidating fraudulent transfers of property, thereby making the asset a part of the debtor's estate again. §§ 544(b)(1), 548(a)(1)(B). Under both provisions, the trustee's power is limited to "any transfer of an interest of *the debtor* in property." § 544(b)(1) (emphasis added); *see also* § 548(a)(1)(B).

The trustee does not dispute that in order to state a claim under either § 544 or § 548, she must allege that the Howlands—*i.e.*, the debtors—had an interest in the property when it was transferred in 2010. Nor does she dispute that Meadow Lake (and not the Howlands as individuals) transferred the property to Beads and Steeds, at least nominally. Rather, she relies on two related doctrines as the basis for treating the 2010 transfer as a "transfer[] of an interest of the debtor in property": veil piercing and substantive consolidation.

A.

First, veil piercing. It is hornbook law that incorporation shields individual shareholders from the debts incurred in the corporation's name, and the corporation from the debts of the individual shareholders. *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). But, for as long as the veil between corporation and shareholder has existed, courts have "pierced" it. *See* Peter B. Oh, *Veil-Piercing*, 89 Tex. L. Rev. 81, 83 n.3 (2010) (noting that "the earliest general shareholder liability statute preceded the earliest judicial reference to veil-piercing by a mere twelve days"). Under the typical description of the "veil piercing" doctrine,

> [t]he "veil" of the "corporate fiction," or the "artificial personality" of the corporation, is "pierced," and the individual or corporate shareholder exposed to personal or corporate liability, as the case may be, when a court determines that the debt in question is not really a debt of the corporation, but ought, in fairness, to be viewed as a debt of the individual or corporate shareholder or shareholders.

Piercing the Corp. Veil § 1:1 (footnotes and emphasis omitted).

With that brief synopsis of veil piercing in mind, we turn to the specific points of contention in this case. To state a claim under § 544 and § 548 based on a veil-piercing theory, the trustee must establish two propositions of Kentucky law. *See In re Fordu*, 201 F.3d 693, 700 (6th Cir. 1999) ("[A] debtor's property rights are created and defined by state law."). First, she must demonstrate that Kentucky law allows litigants to use veil piercing as a way to consolidate two entities. If so, the trustee must then establish that Kentucky law recognizes the particular variety of veil piercing she seeks to use here: "reverse" veil piercing.

On the first point—whether a litigant may use veil piercing to consolidate a debtor and its alter ego into a single entity—the cases fall into two camps. The first camp applies what courts sometimes refer to as the "identity" approach to veil piercing. Under this approach, piercing the corporate veil "expands the debtor's estate to include the property of its alter ego" by "deeming a corporation and its alter ego to be a single entity." *In re Am. Int'l Refinery*, 402 B.R. 728, 744 (Bankr. W.D. La. 2008) (applying Nevada law); *see also In re Boyd*, No. 12-05107, 2012 WL 5199141, at *6 (Bankr. W.D. Tex. Oct. 22, 2012). "As a result, a 'corporation has, in some sense, an equitable interest in the assets of its alter ego.'" *In re Am. Int'l Refinery*, 402 B.R. at 744–45 (quoting *In re Western World Funding, Inc.*, 52 B.R. 743, 783 (Bankr. Nev. 1985) (applying Nevada law)). This is the approach to veil piercing for which the trustee advocates.

The second camp employs veil piercing as a form of vicarious liability, shifting liability from the debtor to its alter ego. *See, e.g.*, *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) ("Efforts to pierce the corporate veil ask a court to hold *A* vicariously liable for *B*'s debt."). Under this approach, "[t]he doctrine of alter ego does not create assets for or in the corporation. It simply fastens liability upon the individual who uses the corporation merely as an instrumentality in the conduct of his own personal

business." *Garvin v. Matthews*, 74 P.2d 990, 992 (Wash. 1938); *see also* 1 Fletcher Cyc. Corp. § 41.10 ("An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action such as a tort or breach of contract.") (footnotes omitted).

Kentucky falls into the second camp. In Kentucky, "It is fundamental corporate law that a shareholder is not liable *for a debt of the corporation* unless extraordinary circumstances exist to impose liability. Such extraordinary liability may be imposed . . . by 'piercing the corporate veil.'" *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983) (emphasis added). "The key element in this quote," the Kentucky Supreme Court later explained, "is that it pertains to liability 'for a debt of the corporation.'" *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989) (quoting *Morgan*, 652 S.W.2d at 85). According to the Kentucky Supreme Court, corporate veil piercing "governs the *vicarious liability* of a shareholder for the debts of a corporation." *Id.*; *see also Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 155 (Ky. 2012) ("[T]he debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation.").

These authorities notwithstanding, the trustee insists that Kentucky courts would allow the use of veil piercing to consolidate entities. For support, she cites two decisions, *Louisville & Nashville R.R. v. Carter*, 10 S.W.2d 1064 (Ky. 1927), and *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224 (Ky. 1974). All she does, however, is quote naked statements from each case without examining how the court actually applied the doctrine. Neither case supports her position.

In the first case, *Carter*, the court employed veil piercing to hold the alter ego vicariously liable, not to consolidate entities. This much is clear from its holding: "[The Louisville & Nashville Railroad Company] is responsible to the [plaintiff] in this case in the same fashion

as the F. & C. would have been." *Carter*, 10 S.W.2d at 1068. Moreover, the passage the trustee quotes from *Carter*, she takes out of context. In reciting the law on corporate veil piercing, *Carter* posed the relevant inquiry as "whether the act in question, though done by shareholders– that is to say, *by the persons united in one body*, was done simply as individuals and with respect to their individual interests as shareholders, or was done ostensibly as such, but, as a matter of fact, to control the corporation." *Id.* (emphasis added) (quoting *State ex rel. Atty. Gen. v. Standard Oil Co.*, 30 N.E. 279, 287 (Ohio 1892)). The passage refers to various individual shareholders as being "united in one body," not to the union of the shareholders and the separate corporate entity. *Carter* provides no support for the trustee's case.

With respect to the second case, *Dare To Be Great, Inc.*, the trustee relies on the court's statement that "[g]enerally a corporation will be looked upon as a separate legal entity but when the idea of separate legal entity is used to justify wrong, protect fraud or defend crime *the law will regard the corporation as an association of persons*." 511 S.W.2d at 227 (emphasis added). However, the court did not expound on the statement, simply concluding that the trial court did not err in failing to dismiss the alter ego from the case. In any event, the statement is not inconsistent with Kentucky's vicarious liability approach to veil piercing, since it could simply mean "the law will regard the corporation as an association of persons [*for purposes of imposing liability*]." *Id.*; *see also Inter-Tel Techs., Inc.*, 360 S.W.3d at 169 (approving the use of veil piercing in a single action because "the creditor may know enough to proceed against all potentially liable parties"). This single, ambiguous sentence is a slim reed on which to define Kentucky's approach to veil piercing, especially in light of the contrary intervening authority discussed above.

The fact that Kentucky endorses the vicarious liability approach to veil piercing, as opposed to the identity approach, dooms the trustee's fraudulent transfer claims against Beads and Steeds under a veil piercing theory. The Bankruptcy Code permits the trustee to avoid a transfer of property only if the debtor had an interest in the property. 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B). Under the vicarious liability approach, however, veil piercing does not give the pierced entity (*i.e.*, the debtor) an interest in its alter ego's assets—it gives the pierced entity's *creditor* (*i.e.*, the trustee) an interest in the alter ego's assets in order to satisfy its judgment against the pierced debtor. *Compare Garvin*, 74 P.2d at 992 (under vicarious liability approach, "[t]he doctrine of alter ego does not create assets for or in the corporation"), *with In re Am. Int'l Refinery*, 402 B.R. at 744–45 (stating that identity approach to veil piecing gives the debtor "an equitable interest in the assets of its alter ego") (citation omitted). Under § 544 and § 548, that is not enough. Because Kentucky veil piercing does not transform the alter ego's property into the property of the debtor, but rather simply allows a creditor to pursue the alter ego under a vicarious liability theory, the trustee has not stated a claim under § 544 and § 548, both of which require that *the debtor* have an interest in the transferred property.[2]

## B.

Second, substantive consolidation. Although similar in some ways to veil piercing, substantive consolidation is a distinct concept unique to bankruptcy law. *See generally In re Cyberco Holdings, Inc.*, 431 B.R. 404 (Bankr. W.D. Mich. 2010) (charting the history of

---

[2]The parties spend a significant portion of their briefs jockeying over whether Kentucky would recognize "reverse" veil piercing. However, based on the foregoing, we need not address this issue because, regardless of the answer, Kentucky's approach to traditional veil piercing makes clear it would not use reverse veil piercing to consolidate two entities. We therefore leave for another day the question whether the Kentucky Supreme Court would recognize reverse veil piercing.

substantive consolidation in bankruptcy law); *see also In re NM Holdings Co., LLC*, 407 B.R. 232, 281 (Bankr. E.D. Mich. 2009) (noting the similarity to veil piercing); *In re Am. Camshaft Specialties, Inc.*, 410 B.R. 765, 785 (Bankr. E.D. Mich. 2009) (same). Whereas veil piercing seeks to hold shareholders vicariously liable for corporate wrongs, "[s]ubstantive consolidation goes in a direction different (and in most cases further) than [that]." *In re Owens Corning*, 419 F.3d 195, 206 (3d Cir. 2005). "It brings all the assets of a group of entities into a single survivor. Indeed, it merges liabilities as well." *Id.* In short, it "treats separate legal entities as if they were merged into a single survivor." *In re Cyberco Holdings, Inc.*, 431 B.R. at 410 (citation omitted). For this reason, several courts have held that substantive consolidation allows a trustee to bring avoidance claims involving transfers by the consolidated non-debtor entity—exactly what the trustee seeks to do here. *See, e.g.*, *In re Kroh Bros. Dev. Co.*, 117 B.R. 499, 502 (W.D. Mo. 1989) ("The substantive consolidation order caused [the consolidated non-debtor entity's] property to become 'property of the estate' as defined in § 541. At that point, the trustee acquired standing under §§ 547 and 548 to pursue the money as a preference and/or an avoidable transfer."); *In re Bonham*, 229 F.3d 750, 768 (9th Cir. 2000).

> To state a claim for substantive consolidation, the trustee must allege:
>
> (i) prepetition [the entities sought to be consolidated] disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity, or
>
> (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

*In re Owens Corning*, 419 F.3d at 211 (footnotes omitted) (formatting supplied).[3] The party seeking to consolidate entities has the burden of establishing either allegation. *Id.* Substantive

---

[3]This court has not adopted a test for evaluating a substantive consolidation claim. *See In re Cyberco Holdings, Inc.*, 734 F.3d 432, 439 (6th Cir. 2013) ("Our cases have not discussed the

consolidation is an "extreme" measure, only to be used "sparingly," especially when consolidating a non-debtor entity. *Id.* at 208–09, 211; *In re Am. Camshaft Specialties, Inc.*, 410 B.R. at 787.

*Pre-Petition Disregard.* Under the first *Owens Corning* test, the trustee must allege facts establishing that, before filing for bankruptcy, the debtors and Meadow Lake "disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity." *In re Owens Corning*, 419 F.3d at 211.

The relevant allegations in the proposed amended complaint—namely, paragraphs thirteen through sixteen—fall far short of demonstrating a significant disregard of corporate separateness such that the debtors' and Meadow Lake's creditors relied on the breakdown and treated them as one. Paragraph fifteen alleges that the debtors and Meadow Lake engaged in a series of transactions between themselves that flouted the corporate separateness of Meadow Lake. While this allegation may show that the debtors and Meadow Lake acted as a single entity at times, it fails to allege any reliance by creditors, a necessary component to a substantive consolidation claim based on prepetition conduct. *Id.* (requiring that "their creditors relied on the breakdown of entity borders").

Paragraph sixteen alleges that creditors treated the debtors and Meadow Lake as a single entity. But such a "formulaic recitation," standing alone, "will not do." *Iqbal*, 556 U.S. at 678. The proposed complaint also alleges that the debtors listed Meadow Lake in their bankruptcy

---

concept at length or prescribed factors to consider when it is to be applied, but we have recognized the procedure without criticism."). In the lower court, the trustee propounded the test articulated in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). Beads and Steeds did not object to the *Owens Corning* test, but argued that the trustee failed to adequately plead a claim under that standard. Because the parties do not brief the issue, and because the trustee's claim fails under the standard she proffers, it is unnecessary to decide whether the *Owens Corning* test sets forth the best articulation of the substantive consolidation elements.

petition as an "[o]ther [n]ame[] used by the Debtor in the last 8 years." Yet, one can only speculate whether, based on that allegation, a specific creditor "actually and reasonably relied on debtors' supposed unity." *In re Owens Corning*, 419 F.3d at 212; *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010) ("To overcome a Rule 12(b)(6) dismissal, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." (internal quotations and brackets omitted)). Missing are any allegations that the debtors or Meadow Lake distributed misleading financial information to creditors, failed to accurately record their transactions with creditors, or otherwise misled creditors into believing they were dealing with them as one indistinguishable entity. *See In re Owens Corning*, 419 F.3d at 212; *In re Am. Camshaft Specialties, Inc.*, 410 B.R. at 789. In fact, the allegations that debtors personally guaranteed Meadow Lake's loan and executed an assignment with Meadow Lake indicate that they held themselves out to the world as separate entities.

In sum, the trustee's proposed amended complaint is devoid of any factual allegations that any creditor relied on the debtors' disregard of corporate formalities in making a business decision in connection with either entity. Therefore, the bankruptcy court correctly held that the transfer failed to state a claim under the first *Owens Corning* test.

*Post-Petition Messiness*. The proposed complaint is similarly devoid of any allegation that, after filing for bankruptcy, the debtors' and Meadow Lake's "assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." *In re Owens Corning*, 419 F.3d at 211.

In paragraph forty, the trustee alleges that substantive consolidation would be "for the benefit of the Debtors' creditors because [it] will permit the Trustee to recover the fraudulent transfer made by Meadow Lake to Beads and Steeds." However, to state a claim under this part,

the proponent must do more than allege that consolidation will provide a benefit to *some* creditors. *Id*. at 214. Rather, "commingling justifies consolidation only when separately accounting for the assets and liabilities of the distinct entities will reduce the recovery of *every* creditor—that is, when every creditor will benefit from the consolidation." *Id.* The complaint is silent with respect to whether substantive consolidation would have a beneficial effect on *Meadow Lake's* creditors.

Moreover, the proposed complaint simply does not allege that the debtors' and Meadow Lake's assets are "hopelessly scrambled." Paragraph fifteen alleges that the debtors listed Meadow Lake's debts as their own, the implication being that even the debtors could not distinguish between their assets and Meadow Lake's. However, the very fact that the trustee can make this allegation—*i.e.*, highlight the debtors' mistake of listing another entity's debt as their own—demonstrates that she can, in fact, distinguish the debtors' assets from Meadow Lake's. *See In re Am. Camshaft Specialties, Inc.*, 410 B.R. at 791 (holding that the trustee's claim under the second *Owens Corning* test failed because he did not establish "it [was] impossible to separate [the debtors' assets] and tell them apart").

Nor does the complaint allege that separating the debtors' and Meadow Lake's assets would be prohibitively costly or otherwise hurt all of the creditors. The trustee argues that the failure to order substantive consolidation will harm creditors because it will reduce the distribution to the debtors' creditors. Yet that is not the type of harm substantive consolidation seeks to ameliorate. Rather, it is the prospect that the debtors' interrelationships are so "hopelessly obscured and the time and expense necessary to attempt to unscramble them [are] so substantial" that it "threaten[s] the realization of any net assets for all of the creditors." *In re*

*Fishell*, No. 95-1637, 1997 WL 188458, *2 (6th Cir. April 16, 1997) (per curiam). The trustee does not allege such harm.

In sum, the proposed amended complaint fails to adequately allege a claim for substantive consolidation under either *Owens Corning* prong. The bankruptcy court therefore properly denied as futile the trustee's motion for leave to file an amended complaint.

## IV.

For these reasons, we affirm the judgment of the district court.